The opinion of the court was delivered by
Smith, J.
The declaration is in assumpsit, and contains the usual money counts, with a special count,for the' use and occupation of two houses in Pitt township, and' for the use of a copper boiler in a brewery. ■ The cause was tried at the'lasi; Circuit Court for this county, (on the 30th of August, 1828,) before Justice *414 Huston, when a verdict and judgment were rendered for the defendant. A motion for a new trial being made and overruled, the plaintiff thereupon appealed. ‘
. It appeared in evidence, that in the year 1822, a Mr. Grenough had issued a landlord’s warrant for arrears of ground rent, due from' certain premises, situate in Pitt township, on which there were several buildings, at thát time occupied as a brewery. Under this .warrant, the bailiff, of Grenough levied on a brew-kéttle, or coppery-boiler, set up in the brewery, and fixed in its proper place.* The bailiff loosened it and took it out of its place, and moved- it to the door of the brewery, out of which it could not be taken. The representatives' of Robert Graham, deceased,, holding the premises under a certain deed, (called, and well understood here by the name .of a pérpetual lease,) had rented them to Andrew Scott, who, at the time of Grenough’s:warrant, was in possession. The administrator having borrowed two hundred dollars from James Gray, the plaintiff, with that money paid the rent aforesaid, and redeemed the brew-kettle, pledging it to James Gray for the money so borrowed', and agreeing .that it should, be his if the same were not refunded within sixty days. The money was not repaid, and both the administrator and the plaintiff regarded'the kettle, after the expiration of the sixty days, as the property of the latter. •The plaintiff, accordingly, hired it to Scott, who agreed to' pay him for. its use.1 It was also.proved, that the first building on the premises had been erected many years ago, and used for a distillery; that an addition was built in 1816.or 1817, and that the brew-kettle in controversy, was manufactured and fixed in the additional, building in the year 1819, for a brewery. It was further proved, that the business of brewing could not be carried on without a brew-kettle or boiler, and is so essential, indeed, that a brewery, would be worth nothing without one.
On the 10th of May, 1820, Henry Holdship, the defendant, filed a mechanics’ lien against the former owners, Caldwell and Company, upon the premises in question., for. three thousand dollars, issued a scire facias thereon, and obtained judgment for one thousand eight hundred and seventy-three dollars and eighty-five' cents, on which a fieri facias was levied on the property-where the brewery stood with the appurtenances. The property was condemned, sold, and bought by Henry Holdship, who claims the copper-kettle or boiler; the valheof which is the object of this suit.
' Although the plaintiff assigned four reasons for a new trial, two questions only have been raised on the argument, and need be considered in deciding the case. The first is, was the brew-kettle a fixture annexed to the freehold, and so real estate; or was it merely personal property? In the time of Lord Coke, the general rule was, that whatever was once annexed to the freehold, became part thereof, and could not be afterwards separated, but by him who was entitled to the inheritance; to have taken it aiyay, would have *415 been waste in any other person. Indeed, the law is'thus laid down in all the old, and recognised to have been so in the more modern cases. This rule, however, has been relaxed, especially in eases-between landlord and tenant, and is made more favourable to the latter. Where a man for instance, rents a house, a mill, or a shop,, and for his own convenience, puts stoves in the house, or a packing press, or elevators in the mill, or a crane and pulley, or other like thing in the shop, the tenant may remove any of the articles thus put up fo.r his own convenience or advantage. This, I .consider well settled. As to the full extent of the rule in its application to the various classes of cases and persons', it is unnecessary here to give an opinion. - .
From the adjudged cases on .this subject, I think we are warranted in saying, that every thing put into, and forming part of a building, or machinery for manufacturing purposes, arid essential to the manufactory, is part of the freehold;, the wheels of a mill, the stories, and even the bolting cloth, are parts of the mill and of the freehold, and cannot be levied on as personal property. If the law were otherwise, it would produce great hardships,- and manifest injustice; for, if I should devise my mill to one.of my children, and give all my personal property to another,- would any one dream, that the wheels, stone.s, and cloths, of the mill, could justly be taken by rny executors, and sold as personal, property? But, admitting the law to be so, it is, nevertheless, contended, that this copper-kettle or boiler, is not a fixture, because, it was not placed in the building when it was erected, was easily removed, and was, therefore, merely a chattel. Several eases were cited to support this position, and great reliance was. placed .on the case in 14 Mass. Rep. 352, in which Chief Justice Parker did consider three carding machines in a wool carding factory, as personal property. Upon an attentive examination of that case, I cannot think that it essentially resembles the one under consideration; There the carding machines were not a necessary part of the manufactory, and essential to its operations. Nor were the three machines therein mentioned, in strictness, fixtures; for it clearly appears, that they stood on the floor of the factory building, that they were not nailed to the floor, nor in any manner attached or annexed to the building, except by a leather band, which passed over the wheel or pulley, to give motion to the machines. Now, in the case before us, the boiler was fastened and fixed in the building, and’itis plain, that it must have been so, to be serviceable or beneficial. When a brewery is about to be erected, a particular placé is assigned for the boiler,, which is carefully walled in, and is as necessary to the brewery as a chimney to a house, - All the witnesses said, that this copper boiler was an essential part of the brewery, without which, the business could not be commenced nor carried .on. This boiler, therefore, could not be levied on, or sold as personalty, and the administrator of Graham could not lawfully pledge it as such. The *416 eases cited from 15 Mass. Rep. 159, in which it was decided, that a dye-kettle fixed in brickwork in a fulling mill, was a part of the realty, and that from Mason’s Rep. 459, in which Justice Story, after a careful review of all the cases on the subject, decided, that the main mill-wheel- and gearing of a factory attached to the same, and necessary for its operation, are fixtures and redi estate, are, in the opinion of this court, decisive of the first question.
As to the second question, whether the.boiler, if it were a fixture, being severed from the freehold, at the time of the sale or transfer to Gray, may not, therefore, be held under that transfer?we deem it only necessary to remark, after what has been already stated, that as it -was not severed from the brewery by the owner of the freehold, it remained part' thereof, and James Gray could' not, under the circumstances, derive any advantage from that transaction. Besides, the mechanics’ lien had attached before the boiler was severed and before the transfer to him. In Sheph. Touchs. 90, it is laid down, that “ that which is parcel or of the essence of a thing,-although at the- time of the grant it bp actually severed from it, does pass by the grant of the thing itself. And, therefore, by the grant of a mill, the mill stone doth pass, although at the time of the grant it be actually severed from the mill. So by the grant of a house, the doors, windows, locks, and keys, do pass, as parcel thereof, although at the time of , the grant they be actually severed from it.” As there was no severance here at any time, before the mechanics’ lien had completely attached, the plaintiff cannot hold the boiler under the transfer. The'judgment of the Circuit Court must therefore be affirmed.
Tod, J.
I am not able to agree entirely with the rest of the court. The old rules of the common law about annexation to the freehold, have been much relaxed in modern times in favour of trade and manufactures. Holdship was employed to put up the building: therefore, I admit, his lien under the act of assembly covered not the house only, but the lot on which the house stood. But, in my opinion, it did riot affect the copper boiler, which was set up, not by Holdship, nor at his expense, but by Graham, then owner of the freehold, and this sometime after all Holdship’s work had been finished. This copper boiler or brew-kettle, which by the way, was no inconsiderable part of the expense, which appears to have been set up in brick work in the middle of the brewery, was upion Graham’s death, distrained on by the ground landlord for arrears of ground rent, amounting to two hundred dollars, and removed from its place, but not out'of the building. Upon that, Gray, the-plain tiff, by agreement with Graham’s administrator, redeemed the property by advancing the two hundred dollars, the amount of the landlord’s demand, stipulating with the administrator that he, Gray, should hold the copper boiler in pledge for the repayment of his money so advanced, and in defaultof payment by *417 a certain short day, that he should hold the property absolutely. Holdship, the builder of the house, not having been paid for his work.and materials, proceeded to enforce his lien by scire facias under the act. of assembly. And, on Holdship’s execution, the lot and the building were sold by the sheriff. Holdship himself became the purchaser, and under the purchase, he claims the copper boiler as a fixture annexed to and passing with the freehold. This action is brought in consequence of a special agreement between the parties to try their respective rights. My opinion would be, that Gray’s title is valid to secure his money advanced and the interest upon it, and no' more; and. that Holdship has no title at all. '
This is not a case of dispute between co-heirs or co-devisees, or between heir and executor, or a case of dower claimed out of the brewery, or a dispute between tenant for life and remainder man. I take it, a broad distinction has been established, and that as beT tween mortgagee and mortgagor, and between landlord and tenant and all similar cases, fixtures for manufacturing purposes, and sometimes even for agricultural purposes, not consolidated with the walls nor incorporated with the freehold, set up by a mortgagor after the mortgage, or by a tenant during his term, may be removed, provided it can be done leaving the freehold property in as good condition as they found it. The present case seems .in substance to be that of a prior mortgage, and afterwards an erection of fixtures by the mortgagor. If there is any difference, that difference is against Mr. Holdship: for certain it is, that a voluntary actual mortgage would appear to be stronger against. Graham and against Graham’s administrator than a mere implied mortgage or pledge by act of law to secure the builder’s charges. I shall only refer, as shortly as possible, to some authorities which may seem to justify me in dissenting from the court. Toll. Law of Exec. 96, enumerates the things which may be removed from the freehold, and names brewing vessels, vats for dyers, and soap boiler’s coppers, provided it can be done without injury to the fabric of the house; and this even between heir and executor. By 2 Com. Dig. new Ed. Biens B. in note, the removal of such fixtures may be made by the tenant after the end of his term. Lord Hardwicke seems to have considered the point in question as so completely settled eighty years ago, that he brings it in by Way of illustration of other cases supposed to be. doubtful. The question being, whether afire engine, set up for working a colliery, was personal estate, or part of the freehold, he says, inter alia, “ But it has been insisted, that fixing it in order to make it work, is properly an annexation to the freehold. To be sure, in the old cases, they go a great way upon the annexation to the freehold, and so long ago as Henry the Seventh’s time, the courts of law construed even a copper and furnaces to be part of the freehold. Since that time the general ground that courts have gone upon, of relax *418 shg the strict construction of law is, that it is for the benefit of the public to encourage tenants for life, to do what is advantageous to the estate during their term.” And, again: “ Coppers and alt sorts of brewing vessels cannot possibly.be used without being as much, fixed- as fire engines, and in .'brew houses especially, pipes must be laid through the walls; and yet, notwithstanding this, as they are laid for the convenience of trade, landlords will not be allowed to retain them.” He observes, “ this is not a case between the ancestor and heir.” Lawton v. Lawton, 3 Atk. 13.
. In another case, where under a mortgage of. a brew house, with its appurtenances, the utensils for brewing, were claimed by the mortgagee, the same chancellor remarks, “ I am inclined to think it was not the intent of the mortgagor to mortgage the utensils; ■for there is some description generally, of things in a brew house.” The rule as to fixtures, as between an heir and an executor, is another'thing, &c. Plow does it stand between a purchaser and a vendor ? If a man sells a house where there is a copper or a brew house where there are utensils, unless there was some consideration given for them, and a valuation set upon them, they would not pass.” Ex parte Quincey, 1 Atk. 477.
In The Union Bank v. Emerson, 15 Mass. 159, it Was held-, that a kettle.in a fulling mill, set'in brick work, passed by a mortgage of the mill, but the court expressly add, “Had the defendant, after making the mortgage deed, put this kettle into the mill, wé should have considered him authorized to remove it before delivering possession to the plaintiffs.”
14 Mass. Rep. 356, decides, that a carding machine in a wool factory, and 6 Johns. Rep. 5, that a stone.for grinding bark, affixed to a bark mill, were no parts of the freehold. In 20 Johns. 29, tenant for years after the end of his term, was permitted to carry off a cider mill put up by himself. 17 Johns. 121, appears to be in substance the very case before us-. It was a case of a mortgage. There were sundry carding and spinning machines and frames. The court held that such of the frames as had been put up subsequent to the making of the mortgage, did not pass to the mortgagee. The case of Powell and Wife v. The Manufacturing Company, &c., 3 Mason, 549, cited for the plaintiff, appears to me inapplicable. Not only was it a case of the main mill wheel and •gearing of a factory, but.it,was a case of claim of dower, and the fixtures had.been erected by the husband himself. Goddard v. Chase, 7 Mass. 432, also cited by the plaintiff’s counsel, was the case of a defendant, who, after his house had been transferred to a creditor by process of law, in satisfaction of a debt, re-entered and tore away some cast iron stoves from the chimneys: which, it was decided, he cpuld not legally' do. I take it, that in Pennsylvania, stoves and grates are generally considered personal- property, certainly so as between landlord and tenant. The -Massa* *419 ohixsetts ease appears to have been decided on its own circumstances: for it was in proof, that the appraisers of the house included the stoves in their estimate of its value, and that was one of the reasons given by the court for their opinion. Clearly, the creditor must have been held to be a purchaser of the stoves.
• Another exception has been urged by the plaintiff’s counsel. The judge rejected proof showing that Holdship, in order to procure 'a condemnation of the property, appeared before the inquest by Mr. Forward, his counsel, and insisted that the copper boiler in question, was no part of the levy, nor of the freehold, and being merely personal estate, ought not to be taken into the valuation. I 'agree with my brethren, that such proof was rightly rejected. I dislike this matter of giving the arguments of counsel in evidence against their clients. But, if instead of an argument upon the law, it, had been an assertion of a fact, then I should hold the evidence to be legal, not only to show- full notice to Holdship of Gray’s title, but upon the principles established in the case ex parte Quincey and -in the Massachusetts case of Goddard v. Chase, proving a very material thing, that Holdship, at the sheriff’s sale, could not have intended to make a purchase of the copper boiler.
judgment affirmed,;