### WALKER *vs.* SHERMAN.

Where in the *partition of real estate* belonging to *tenants in common*, and consisting in part of a *woollen factory*, the commissioners treated part of the machinery found in the factory as *personal property* and not as belonging to the *realty*, the court on motion confirmed their report; it not appearing that the machinery in question was in any manner *affixed* or fastened to the building or to the land.
Cases arising under the *law of fixtures* collected and commented upon.

C. P. KIRKLAND, for the defendant, moved to set aside the report of commissioners in partition, on the ground that they had improperly made partition between the parties, who were tenants in common, in equal moieties, of a woollen factory, a house, barn, and twenty acres of land. He read affidavits tending to show that the premises were so circumstanced, as not to admit of a just and equal partition, and that they should therefore have been sold. But, if otherwise, that the commissioners in making partition had mistook the character of several articles of machinery belonging to the mill, considering them as *personal property*, whereas they should have been regarded as *real estate*, and had in effect, therefore, passed to the plaintiff, to whom the mill and its appurtenances were awarded and set off in severalty, with six acres of land and one-half the barn ; the residue, including the dwelling-house, being set off to the defendant. The affidavits tended to show other inequalities, and fifteen affidavits were produced in which the deponents expressed their general opinion that the premises could not be divided without great prejudice to the owners.

The partition was made while the defendant was absent, he being a resident of the state of Missouri, whence he had returned to this state to attend an auction of the premises in question, under the impression that the commissioners would report in favor of a sale. Before proceeding to Missouri, he appointed an attorney to take charge of the suit. One of the commissioners, Mr. *Goodrich,* made affidavit that separating, from the premises the loose machinery as being personal property, the commission-

Walker *v.* Sherman.

ers concluded that partition of the residue, which alone they considered real property, could be made without prejudice ; otherwise not. Mr. *Smith*, another of the commissionere, made oath, that those parts of the machinery which were thus separated, consisted of *two double carding machines, a picking machine, shearing machine, spinning machine, looms, &c.*; and concurred, that if they were not to be considered personal property, the commissioners would have been under the necessity of reporting the premises so situated that a partition could not be made. These machines, according to the defendant's affidavit, had been used and passed from one owner of the factory to another as parts of the factory, for eleven years or more, the same as if they had been actually annexed; and he expressed his opinion that they were parts of the factory.

*L. Walker*, contra, read affidavits admitting that the above articles were excluded from the estimate of the commissioners, as being personal property ; and tending strongly to show that, being thus excluded, the partition was fairly made. These affidavits went very fully to contradict or explain away all the facts alleged in the defendant's affidavits which were relied on as impeaching the propriety or justice of the partition, except the fact of treating the above articles omitted in the estimate as personal property. The affidavits further shewed that the commissioners met several times and heard the counsel and agents of the parties,. making surveys, and giving the case very full consideration ; that the plaintiff's counsel, at these meetings, admitted that all the machinery belonging to the parties and *affixed to the freehold* was real estate ; otherwise of machinery, which was loose and moveable, viz. *carding machines, a picking machine, a shearing machine, a spinning jenny, a spinning billy and a loom*, which were in the factory, but not in any manner affixed or fastened to the buildings or lands. The commissioners acted on this distinction.

*B. D. Noxon*, on same side.

*By the Court,* Cowen, J.   Judging from the affidavits before us, the machinery which the commissioners excluded as being personal property, was such only as was moveable, and in no way physically attached to the factory or land, though it had been used for several years, as belonging to the factory, and was as material to its performance in certain departments of its work, as the machinery which was actually affixed.   Did the commissioners err in disregarding the moveable machines ?   That is the only question.   If they were right, the equality and justice of the partition are apparent upon the proofs ; if wrong, the report should be set aside, and the commissioners be required to review their decision.

The question is one between tenants in common, the owners of the fee ; and is, we think, to be decided on the same principle as if it had arisen between grantor and grantee, or as if partition had been effected by the parties through mutual deeds of bargain and sale.   As between such parties, the doctrine of fixtures making a part of the freehold, and passing with it, is more extensively applied than between any others.   As between tenant for life or years and reversioner or remainder-man, all erections by the former for the purposes of trade or manufactures, though fixed to the freehold, are considered as his personal property, and as such, may be removed by him during his term, or be made available to his creditors on a *fieri facias.*   On his death, they go to his executors or administrators ; yet by a conveyance, they pass to the vendee.   *Fructus industriales,* it is well known, always go, on the owner's death, to the executor or administrator, not to the heir ; whereas, they are carried by a devise or other conveyance of the land, to the devisee or vendee.   *Spencer's case, Winch's Rep.* 51.   *Austin* v. *Sawyer,* 9 *Cowen,* 39.   *Wilkins* v. *Vashbinder,* 7 *Watts,* 378, *and the cases there cited overruling Smith* v. *Johnston,* 1 *Pennsylv. Rep.* 471, *contra.*   The general rule is, that any thing of a personal nature, not fixed to the freehold, cannot be considered as an incident to the land, even as between vendor and vendee.   The English cases on this subject are, most of them, well collected and arranged in *Amos*

*& Ferard's Law of Fixtures, p.* 1, *ch.* 1, *and p.* 180, *ch.* 5, *Am. ed.* 1830. For some still later, see *Gibbon's Law of Fixtures,* 15, *ch.* 2. The American cases are mostly collected in 2 *Kent's Comm.* 345, *3d ed. note c.* I have said, that as a general rule, they cannot be considered an incident unless they are affixed. This is not universally so. A temporary disannexing and removal, as of a millstone to be picked, or an anvil to be repaired, will not take away its character as a part of the freehold. Locks and keys are also considered as constructively annexed ; and in this country it must be so with many other things which are essential to the use of the premises. Our ordinary farm fences of rails, and even stone walls, are affixed to the premises in no other sense than by the power of gravitation. It is the same with many other erections of the lighter kind about a farm. I shall hereafter have occasion to notice these and a few other like instances of constructive fixtures. I admit that some of the cases are quite too strict against the purchaser ; but as far as I have looked into them, and I have examined a good many, both English and American, they are almost uniformly hostile to the idea of mere loose moveable machinery, even where it is the main agent or principal thing in prosecuting the business to which a freehold property is adapted, being considered as a part of that freehold for any purpose. To make it a fixture, it must not only be essential to the business of the erection, but it must be *attached to it* in some way ; at least, it must be mechanically fitted, so as, in ordinary understanding, to make a part of the building itself.

The question has been occasionally examined in this court as between grantor and grantee, and in some other relations. The most material cases are *Heermance* v. *Vernoy,* 6 *Johns. Rep.* 5 ; *Cresson* v. *Stout,* 17 *Johns. Rep.* 116, 121 ; *Miller* v. *Plumb,* 6 *Cowen,* 665 ; *Austin* v. *Sawyer,* 9 *Cowen* 39 ; and *Raymond* v. *White.* 7 *id.* 319. None of them treat a personal thing as a fixture short of physical annexation ; and some are peculiarly strong against the purchaser. The first related to a sale of land, on which was a bark-mill, and a stone for grinding bark, to be used in a tannery. The court said, it seems to be the better

opinion that the mill was personal property : for the mill-stone, with the building covering it, was necessary to the tanning business, a matter of a personal nature. Taken upon that reason, a saw-mill or grist-mill would hardly have passed by such a conveyance ; yet it has been settled ever since the Year Book, 14 Henry 8, 25, that the stones of a grist mill are a part of the freehold, though removed for the purpose of being picked; and they shall pass by a sale of the land. *Amos & Ferard on Fixtures*, p. 183. In *Cresson* v. *Stout*, Mr. Justice Platt expressed his opinion, that frames in a factory for spinning flax and tow, though fastened by upright pieces extending to the upper floor, and cleets nailed to the floor round the feet, neither of the machines being nailed to the building, would not be considered as a part of the freehold. He thought, therefore, that they might be levied on as personal property, under a *fi. fa.* against the owner. But the question was not finally decided. Had the judgment debtor been a mere tenant for life or years, the machinery erected by him would doubtless have been subject to execution against him. But he appears to have owned the fee, subject to a mortgage.

In the case of *Swift* v. *Thompson*, 9 *Conn. R.* 63, the dictum of Platt, J. was followed with respect to cotton machinery, the posts of which were fastened to the floor by wooden screws set into the floor. By unscrewing, the machinery could be removed without injury to the building. *Daggett*, J. said, " We resort, then, to the criterion established by the common law ; could this property be removed without injury to the freehold ? The case finds this fact. This, then, should satisfy us." The views of the learned judge are sustained by the strong case of *Gale* v. *Ward*, 14 *Mass. R.* 352. There, the owner of the freehold had carding machines in his woollen factory, " not nailed to the floor, nor in any manner attached or annexed to the building, unless it was by the leather band which passed over the wheel or pulley, as it is called, to give motion to the machines. This band might be slipped off the pulley by hand, and it was taken off, and the machines removed from time to time, when

Walker *v.* Sherman.

they were repaired. Each machine was so heavy as to require four men to move it on the floor, and was too large to be taken out at the door. But it was so constructed as to be easily unscrewed and taken in pieces ; and the machines were so taken in pieces, when removed by the deputy sheriff." He had levied upon them as being the personal property of the freeholder, entirely distinct from the realty. *Parker*, Ch. J. said, " They must be considered as personal property, because, although in some sense attached to the freehold, yet they could easily be disconnected, and were capable of being used in any other building erected for similar purposes. It is true, that the relaxation of the ancient doctrine respecting fixtures has been in favor of tenants against landlords ; but the principle is correct in every point of view." But see *Union Bank* v. *Emerson*, 15 *Mass. R.* 159, and *Whiting* .v. *Brastow*, 4 *Pick.* 310. *Gale* v. *Ward* is questioned by Richardson, Ch. J. in *Kettredge* v. *Woods*, 3 *New-Hamp. R.* 506. Some of the doctrine in *McLintock* v. *Graham*, 3 *M'Cord*, 553, was equally strong with that in *Gale* v. *Ward*. A still was fixed in a rock furnace, which furnace was built inside and against the wall of a house that had been erected for the express purpose of a still. The whole stood on a tract of land sold under a *fi. fa.* against the owner, and the court said the still did not pass. But there was evidence of the still being excepted at the sheriff's sale, and sold to another ; so that the question did not rest entirely on annexation. Besides, as to this point, the case was afterwards shaken by *Fairis* v. *Walker*, 1 *Bail.* 540, which I shall presently notice more at large. Hutchinson, Ch. J. in *Wetherbee* v. *Foster*, 5 *Verm. R.* 142, denied that pot ash kettles set in brick arches, with chimneys, are real estate. But he cited no authority. The case of *Duck* v. *Braddylb*, 1 *M'Clel.* 217, 13 *Price*, 455, treats cotton machinery, placed and fastened for the purposes of stability, by a tenant for years in a manufactory, as subject to be distrained by his landlord for rent, and to be taken in execution against him. This, doubtless, was so under the peculiar circumstances of that case. Mr. Gibbons remarks, upon this case, *Gibbons on Fixtures*, 20, that such machinery

would seem not to be a fixture, if fastened by bolts or screws, and capable of being removed and replaced without injury, either to the machinery or the building. But the question, whether it should be deemed a fixture as between the owner of the freehold and his devisee or grantee could not arise ; and, according to the report in *Price,* the court expressly refused to pass on the question of fixture ; according to *M'Clelland,* they silently omitted to notice the point.

The third case which I noticed as decided in this court was *Miller* v. *Plumb.* This regarded an ashery ; and the court recognized and acted on the general distinction, that things in any way fixed to the freehold, e. g. potash kettles set in an arch of mason work with a chimney, though the arches were placed on a platform and not fastened to the building, would pass by a sale of the premises ; but it was held, that small kettles, not fixed in any way, though necessary for use in the ashery, would not pass. The distinction between the relation of vendor and vendee, tenant and landlord, was distinctly considered and recognized. See also *Reynolds* v. *Shuler,* 5 *Cowen,* 323. The same distinction was held by Savage, C. J. in *Raymond* v. *White.* The question there was in respect to a heater used in a tannery, but in no way attached to the building. It was placed in a leach or vat, which latter was detached from the building, except that a small piece of board was tacked with nails to the vat and to the side of the building. But there was no necessity for fastening the vat, and the fastening was of no use, except to keep the side standing while the vat was put together." The question was really one between landlord and tenant. But Savage, C. J. said the heater could not be considered as part of the realty, even if the person who placed it had owned the tannery. 7 *Cowen,* 321. In *Kirwan* v. *Latour,* 1 *Harr. & Johns.* 289, the sheriff had sold under a fi. fia. against the owner, *a house and lot with the appurtenances.* This house was built for a distillery ; and the implements necessary to carry on the business were on the premises at the time of the sale. In trover by the owner for these, the court held that the pumps, cisterns, iron grating, door,

Walker *v.* Sherman.

distillery and horse mills passed by the sheriff's deed, but not the joists, vats, buckets, pickets and faucets. The case went on the distinction between things affixed to the freehold and the mere loose utensils necessary for carrying on the business. The former were held to pass, though Chase, J. conceded that a tenant erecting them might have taken them away. It being as he said the same as a question between ordinary vendor and vendee, " every thing passed which was annexed to the freehold." *Id.* 291. The same thing was said as to the fixtures in an iron-foundry. *Hare* v. *Horton,* 5 *Barn. & Adol.* 715. Park, J. said, " Prima facie, a mere conveyance of the foundry would have passed them." Taunton, J. said, if the deed had only mentioned the foundry, the fixtures would have passed. "There are many cases which show this." Patterson, J. said, " I should be sorry to bring into question the decision of this court, that a conveyance of premises will pass all that is attached to them." And the *Union Bank* v. *Emerson,* 15 *Mass. R.* 159, narrows the general reasons of *Gale* v. *Ward.* It holds that a kettle fixed in brick work in a fulling mill passed to the mortgagee of land, on which the fulling mill stood, though the appurtenances were not mentioned. The court recognized the usual distinction in favor of tenants. So they did in *Whiting* v. *Brastow,* 4 *Pick.* 310. In *Fairis* v. *Walker,* 1 *Bail.* 540, the plaintiff sold and conveyed his plantation to the defendant. On this, cotton was grown ; and a cotton gin was in a gin house on the premises attached to the gears. The plaintiff brought trover for the gin ; but the court were of opinion that it was a fixture, and passed with the freehold. They said that, as between heir and executor or vendor and vendee " All things which are necessary to the full and free enjoyment of the freehold and are *in any way* attached to it, are held to be fixtures and pass with it." In the case of the *Olympic Theatre,* 2 *Browne,* 279, 285, the court said, " The permanent stage is so fixed to the freehold, that it ought to be considered as a part of it. But the movable scenery and flying stages are not necessary accessaries to the enjoyment of the inheritance. They were only necessary for the purposes of

theatrical exhibitions, which in this respect must be considered as a species of trade. We are, therefore, of opinion, that they do not belong to the inheritance, and consequently are not subject to the liens, particularly when conflicting with the claims of execution creditors." The court recognized the distinction in favor of tenants; but they appear to consider the rule as also very strict against the heir when the question arises between him and the executor, which has been said to be the same in respect to fixtures as between vendor and vendee. Spencer, C. J. in *Holmes* v. *Tremper*, 20 *Johns. R.* 30. *Miller* v. *Plumb*, 6 *Cowen*, 665. In the case of the *Olympic Theatre*, the court say, 2 *Bowne*, 285, " The general rule appears to be, that where the instrument or utensil is an accessary to any thing of a personal nature, as to the carrying on a trade, it is to be considered a chattel ; but where it is a necessary accessary to the enjoyment of the inheritance, it is to be considered as a part of the inheritance ; a rule as broad as that stated in *Heermance* v. *Vernoy* ; and which has since been utterly repudiated by the *Pennsylvania* cases. In *Gray* v. *Holdship*, 17 *Serg. & Rawle*, 413, a copper kettle or boiler in a brew house was held to be a part of the freehold, though very slightly attached ; and the court mention the wheels, stones and bolting cloths of a mill as parallel and familiar instances. *Id.* 415. So the engine by which a steam saw mill is propelled, thus performing the usual office of a water-wheel. The court mentioned the gears of a mill as part of the freehold. *Morgan* v. *Arthurs*, 3 *Watts*, 140. And see *Lemar* v. *Miles*, 4 *Watts*, 330, *S. P. admitted.* So a steam engine with all its fixtures, used to drive a bark mill in a tannery, being erected by the owner of the freehold, was held to pass by a sale of the latter. *Ives* v. *Ogelsby*, 7 *Watts*, 106. In *Massachusetts*, two stoves fixed to the brick work of a chimney were held to pass. *Goddard* v. *Chase*, 7 *Mass. R.* 432. In *Gibbons on Fixtures*, 17, the learned author remarks that "In *Horn* v. *Baker*, 9 *East*, 215, it was not doubted but the distillers' vats supported upon brick work and timber, but not let into the ground, and vats standing on horses or frames of wood, were goods and chattels ; and that

Walker *v.* Sherman.

stills set in brick work and let into the ground were fixtures. "
He adds that a copper merely resting on a brick work socket,
and a water-butt standing on the ground or a wooden stool, are
not fixtures. Otherwise if the copper were fastened in brick
work.

A deed conveying a *saw-mill* was held to pass a *mill-chain*,
dogs and bars, they being in their appropriate places at the time.
*Fanar* v. *Stackpole*, 6 *Greenl.* 154. The great difficulty arose
as to the *chain*. This was attached by a hook to a piece of a
draft chain, which was fastened to the shaft by a spike. The
chain was prepared for being hooked and unhooked at pleasure.
The premises in question were here conveyed as a saw-mill *eo
nomine*. The chain was commonly used in drawing logs into
the mill. The court, therefore, thought that it might pass as
being essential to the mill, and therefore included in the terms of
the conveyance. But, they added, " we are also of opinion, that
it ought to be regarded as appertaining to and constituting a part
of the realty." See, in connection with this, the remarks of
*Hart*, Vice Ch. near the close of his opinion in *Lushington* v.
*Sewell*, 1 *Sim.* 435, as to what will pass by the devise of West
India land by the name of a plantation.

Certain things are fixtures or not, in their own nature, inde-
pendent of the fact of annexation. Accordingly, some things
which are entirely detached from the freehold are, notwithstand-
ing, holden constructively to belong to and pass with it. Such
cases arise where the fixture is detached for some temporary pur-
pose. We before noticed the removal of a mill-stone to be
picked as one instance. *Amos & Fer. on Fixt.* 183. So, where
the stones and irons of a grist-mill were accidentally detached
by a flood carrying away the main body of the mill, they were
still holden to continue a part of the realty, and therefore not
to be seizable on *fi. fa.* at the suit of a creditor, as personal pro-
perty. *Goddard* v. *Bolster*, 6 *Greenl.* 427. On the other hand,
articles of furniture moveable in their nature are not fixtures,
though attached by screws, nails, brackets, &c. Such are hang-

ings, pier glasses, chimney glasses, book cases, carpets, blinds, curtains, &c.   *Gibbons on Fixtures*, 20, 21.

Whatever its use or object, however, unless the thing were physically annexed to the freehold in some way, it has in general been held not to pass even as between vendor and vendee. This was held of a stove standing on the floor during winter, the funnel running into the chimney, but being loose, and not plastered in.   The stove was up at the time of the conveyance. *Williams* v. *Bailey*, 3 *Dane's Abr.* 152. So of a padlock, and loose boards used for putting up corn in the bins of a corn house, said in *Whiting* v. *Brastow*, 4 *Pick.* 311. So of a heater, placed loose in the vat of a tannery. *Savage*, Ch. J. in *Raymond* v. *White*, before cited. The case of the stove has been questioned, as I shall notice hereafter.

The cases of constructive annexation, where the article is seldom or never corporally attached to the realty, are few, and may be set down as exceptions to the general rule. They are said to be the charters or deeds of an estate and the chest containing them, deer in a park, fish in a pond, and doves in a dove house. 2 *Com. Dig. Biens*, B. 6 *Greenl.* 157. 3 *Dane's Abr.* 156. 3 *New-Hamp. R.* 505. The deer, fish and doves are set down by *Amos & Fer. on Fixt.* 168, as *heir looms;* and so of various other animals. *Heir looms* are a class of property distinct from *fixtures.* But " the doors, windows, locks, keys and rings of a house will pass as fixtures, by a conveyance of the freehold, although they may be distinct things ; because they are constructively annexed to the house." *Amos & Fer. on Fixt.* 183, *and the books there cited.* Many other obvious cases may be supposed. One is, our ordinary Virginia fence on country farms. No vendor would consider that as mere personal property. And in *Kittredge* v. *Woods*, 3 *N. Hamp. R.* 503, it was held that manure lying about a barn yard passed by a conveyance of the land as an incident.

These instances seem fully to justify the courts when they speak of the great difficulty in fixing on any certain criterion which shall govern all cases. They lead to a strain of reasoning

Walker *v.* Sherman.

by Mr. *Dana,* in the 3d vol. of his *Abridgment, p.* 156, as well
by *Weston,* J. in *Farrar* v. *Stackpole,* by which, if followed out
in practice, the machinery now in question might well be con-
sidered as a part of the realty ; and therefore, the subject of
partition.    Mr. *Dana* says, that in all the instances put by him,
the articles " are very properly a part of the real estate and in-
heritance, and pass with it, because not the mere fixing or fasten-
ing to it is alone to be regarded ; but the use, nature and inten-
tion."    Mr. *Dana* questions the decision in *Williams* v. *Bailey,*
before cited, denying that the stove passed.  3 *Dana's Abr.* 157.
*See also Amos & Fer. on Fixtures,* 154, 155.    And Weston, J.
says, 6 *Greenl.* 157, " Modern times have been fruitful of inven-
tions and improvements, for the more secure and comfortable use
of buildings, as well as of many other things which administer
to the enjoyment of life.    Venetian blinds, which admit the air
and exclude the sun, whenever it is desirable so to do, are of
modern use ; so are lightning rods, which have now become
common in this country and in Europe.    These might be re-
moved from buildings without damage ; yet, as suited and adapt-
ed to the buildings upon which they are placed, and as in-
cident thereto, they are doubtless part of the inheritance, and
would pass by deed as appertaining to the realty.    But the
genius and enterprize of the last half century has been in noth-
ing more remarkable than in the employment of some of the
great agents of nature, by means of machinery, to an infine va-
riety of purposes, for the saving of human labor.    Hence, there
has arisen in our country a multitude of establishments for work-
ing in cotton, wool, wood, iron and marble ; some under the
denomination of mills, and others of factories, propelled generally
by water power, but sometimes by steam.    These establishments
have, in many instances, perhaps in most, acquired a general
name, which is understood to embrace all their essential parts ;
not only the building which shelters, encloses and secures the
machinery, but the machinery itself.    Much of it might be easily
detached, without injury to the remaining parts, or the building,
but it would be a very narrow construction, which should ex-

clude it from passing by the general name by which the establishment is known, whether of mill or factory. The general principles of law must be applied to new kinds of property, as they spring into existence, in the progress of society, according to their nature and incidents, and the common sense of the community. The law will take notice of the mutations of language, and of the meaning of new terms, applied to new subjects as they arise. In other words, it will understand words used by parties in their contracts, whether executed or executory, whether in relation to real or personal estate, according to their ordinary meaning and acceptation." He then supposes the steam-saw-mill at Bath to be conveyed by its name of a *steam-saw-mill*, and adds, "If you exclude such parts of the machinery as may be detached without injury to the other parts, or to the building, you leave it mutilated and incomplete, and insufficient to perform its intended operations. The parties, in using the general term, would intend to embrace whatever was essential to it, according to its nature and design ; and the law would doubtless so construe the conveyance as to effectuate the lawful intention of the parties." In aid of these views, undoubtedly, comes the reasoning of Lord Mansfield on the question between the heir and executor respecting the salt pans. *Lawton* v. *Salmon*, 1 *H. Black*, 259, *n.*; 3 *Atk.* 16, *n.* 1, *S. C.* "The present case is very strong. The salt spring is a valuable inheritance ; but no profit arises from it unless there is a salt-work, which consists of a building, &c. for the purpose of containing the pans, &c. which are fixed to the ground. The inheritance cannot be enjoyed without them. They are accessaries, necessary to the use and enjoyment of the principal. The owner erected them for the benefit of the inheritance. He could never mean to give them to the executor," &c. This case shows how the fire engines in *Lawton* v. *Lawton*, 3 *Atk.* 12, erected by the tenant for life, and there claimed by and allowed to his executor against the remainder-man, would have been decided, had the question been between the executor and heir, or vendor and vendee. The case of the cider mill fixed in the ground, which was awarded to the executor as against

Walker *v.* Sherman.

the heir, turned upon a custom. 3 *Atk.* 14, *n.* 2. 1 *H. Black.* 260. Mr. Wilbraham, who argued for the executor and against the remainder-man, in 3 *Atk.* 14, and who succeeded, still gave his opinion, when the salt pan case came before Lord Mansfield, that it would have been different in respect to the heir; and Lord Mansfield expressly adopted his opinion. These salt pans were very slightly fixed with mortar to the floor, and might be removed without injuring the buildings. A steelyard hung in a machine house, was considered a fixture. *Rex.* v. *Inh. of St. Nicholas, Gloucester,* 262. It was fixed for weighing coal and other things brought to market. Lord Mansfield said it must be annexed to the freehold in the nature of the thing. " What is the house? It is the machine house. They are one entire thing, and are together rated by the common known name which comprehends both : and the principal purpose of the house is for weighing. The steelyard is the most valuable part of the house. The house, therefore, applied to this use, may be said to be built for the steelyard, and not the steelyard for the house." One question was whether the whole machine was rateable as real estate, the steelyard inclusive, for the support of the poor. Messrs. Amos & Ferard, speaking of this case, say, " the machine which had been rated was clearly affixed to the freehold ; and the court seem to rely upon that circumstance in delivering their judgment." *Amos & Fer. on Fixt.* 209. They then advert to another case in *Caldecott,* 266. It is *Rex* v. *Hogg.* There the sessions rated a building by the name of " the engine house." The sessions stated, at first, that " the engine is not fixed to the premises, but capable of being moved at pleasure." The whole building and machine were assessed at £36, though the building, independent of the machine, was worth only two guineas. The court directed the case to be restated. They required the sessions to state whether the engine was worked " with water or horses ; whether the house was a dwelling house, or built for the purpose of receiving the engine, and whether it was used for any other purpose ; and in what manner the engine was put up in the engine house, and what its size and bulk." The counsel

afterwards consented to a set of facts ; among them, they agreed " that the engine was worked generally with water, but frequently by hand ; that the building was not a dwelling house, nor was it erected for the purpose of receiving the engine, but formerly was used for the purpose of turning bobbins, and as a weaver's shop ; but is now used for the purpose of carrying on the cotton manufactory, there being in the same building two other engines, one of which was used for the purpose of carding and the other for tumming cotton, which *tumming* is another process of the same manufactory.  All the engines are placed on the *floor*, and *no ways annexed or fastened* to the same, but may be moved at pleasure, and carried out and worked in any other place, either by means of water or manual labor, and are not adapted to any particular building.  The frame in which the engine stands is twelve feet in length, three feet eleven inches in breadth and two feet nine inches in height; the semi-diameter of the largest cylinder, with a small roller at the top rising twenty inches above the frame, the engine sinking in the same, seventeen inches."  Still the difficulty as to annexation remained ; for one question was, whether the machine was rateable except as a part of the real property.  Caldecott, in support of the assessment, complained that the return was evasive in merely saying that the engine was not annexed or fastened to the *floor;* whereas it might be fastened to the building in some other way.  The opposing counsel said it was placed on the floor like a chair. Ashurst, J. said the case was still imperfect ; for it is not stated negatively, that this engine, while it is in a state of working, is not in some way or other fixed to the house.  It is only stated that it is not fixed to the *floor:* but it may be fixed to the walls of the building without being fixed to the floor.  We can assume no facts on either side ; but one should suppose *that it must be fastened in some way*, otherwise, as it is worked by water, the weight of the water must displace it; and if so, it is exactly the case of *The King* v. *St. Nicholas*, in *Gloucester*.  *Buller, J.* said, speaking of the right to the engine, as between executor and heir, or tenant and landlord, " If the engine were *clearly*

Walker *v.* Sherman.

*distinct,* it would, *in all cases,* go to the executor. But here, all being under lease for a term, all would go to the executor." Grose, J. said, " This is an engine house fitted up with an engine, but whether that is fixed or not is uncertain. The engine is evidently a part of the house; for Walmesley is stated to be lessee of the premises, which comprehend the whole, both *house and engine.* I therefore consider this as an entire thing." Messrs. Amos & Ferard, in commenting upon this case, admit that it is generally considered as deciding that a poor rate may be assessed on mere personal property rented with a building. But they say, the better opinion seems to be that it cannot ; and they seem to rely on what Ashurst, J. said, as showing that the engine was probably considered real estate.

The two last cited cases seem to allow that the slightest permanent annexation of machinery is sufficient to make it a part of the realty ; and sustain the reasoning of Weston, J. in *Farrar* v. *Stackpole,* so far as it maintains that the chain was a fixture, because it was hooked for use as a part of the permanent machinery. He said " the chain is the last in the parts of the machinery, to which the impelling power is communicated, to effect the object in view. Its actual location in the succession of parts can make no difference." See also the remarks of *Amos* and *Ferrard on Fixtures, p.* 4, *note* (*a*) *on the case of Davis* v. *Jones.* A later case is somewhat material. *Colegrave* v. *Dias Santos,* 2 *Barn. & Cress.* 76, was decided in Tr. term, 1823, by the king's bench, 3 *Dowl. & Ryl.* 255, *S. C.* It arose between the vendor and vendee of a mansion house with the lands, called Downsell Hall, in Essex. A conveyance was executed and the defendant entered into possession. To the house belonged certain articles which were all taken possession of with it by the vendee, and none of them had been excepted either in the particulars of the sale, which was by auction, or the deed of conveyance. They consisted chiefly of " bells and bell pulls, stoves, grates, blinds, shelves, coppers, a water-butt, and other articles of the same kind," 3 *Dowl. & Ryl.* 255 ; or according to 2 *Barn. & Cress.* " Stoves, grates, kitchen ranges, closets, shelves,

brewing coppers, cooling coppers, mash tubs, locks, bolts, blinds," &c.   The plaintiff, the vendor, demanded them all of the defendant, the vendee, by the name of *fixtures* ; and, on the latter refusing to deliver them, brought trover ; which it was held would not lie for any of them.   It was conceded that some of the articles might be moveables ; in 2 *Barn. & Cress.* Abbott, C. J. said " three or four trifling articles ;" what they were is not stated by either report ; but the recovery was denied for the whole, in as much as there was a general demand and refusal of the whole as fixtures.   Maryatt and Platt mentioned *stoves, bell pulls, shelves* and *water-butts,* as moveables, none of which were permanently attached to the house, or could be considered as part of it.   Bayley, J. asked, " is that so clear ?   To whom would such articles pass, the heir or executor ?"   The counsel submitted they would pass to the executor.   Best, J. asked, " Is not *Wynne* v. *Ingleby,* 1 *Dowl. & Ryl.* 247, a case of ranges, ovens and set-pots, taken by a *fi. fa.* against the owner of the freehold, *see S. C. Nom. Winn* v. *Ingilby,* 5 *Barn. & Ald.* 625, an express decision to the contrary ?   Has the vendor a right to dismantle a house in order to remove such articles ?"   For this colloquy, see 3 *Dowl. & Ryl.* 256.   I can not learn from the books, that there has been much litigation concerning fixtures as between vendors and vendees of houses since the decision of *Colgrave* v. *Dias Santos.*   The rule of that case has lately been held to prevail as between mortgagor and mortgagee.   *Longstaff* v. *Meogoe,* 2 *Adolph. & Ellis,* 167.   Yet the English cases are extremely difficult to reconcile, especially those which have arisen between heir and executor.   *See Amos & Ferrard on Fixtures, ch.* iv. § 2. *p.* 151.

There is also considerable conflict in the American cases, as may be seen by those which I have cited.   The inconsistency appears to have arisen occasionally from not attending to the distinction maintained by the older cases, between the two relations of vendor and vendee, and tenant and landlord ; though sometimes it has also arisen from a difference as to the mode of annexation.   In *Powell* v. *Monson & Brimfield Manufacturing*

*Company,* 3 *Mason,* 459, both the New-York and Massachusetts cases were cited, to prove that the wheel and gearing of a cotton factory were not to be considered a part of the freehold, in such sense that the widow could have dower of them. *Story,* J. was driven to say that the carding machine in *Gale* v. *Ward,* though attached to the wheel by a leather band, was not strictly a fixture ; and that the fastening in *Cresson* v. *Stout,* would not make the machinery so. Yet certainly the wheel, and most, if not all the gearing mentioned and described in 3 *Mason,* might have been as easily removed as many other things attached to the freehold, which have been treated as moveables. The case of the *Cotton gin, in* 1 *Bailey,* the English *Steelyard* and *Engine* cases cited from *Caldecott & Colgrave* v. *Dias Santos,* with several other English cases, show that a very slight affixing for permanent use is sufficient. The mere hooking of a chain in *Farrar* v. *Stackpole,* was sufficient under the circumstances. Why is the key of a door-lock deemed a fixture ? Because it makes a part of the permanent machinery used to secure the door. Yet it is kept entirely separate, except when employed in locking and unlocking the door. The mode of annexation must evidently depend on the manner in which the parts of machinery are used. The saws in a saw mill may be in two sets, one at work, while the other is undergoing repairs or filing and sharpening ; and either may be easily removed without violence to the frame where they belong ; are either to be considered the less fixtures for these reasons ? *Gibbons* says, if a copper fastened in brickwork have a moveable cover, the latter is a fixture ; because the copper is the principal thing and the latter a mere appendage. *Gibbons on Fixtures,* 17. The case of *Davis* v. *Jones,* 2 *Barn. & Ald.* 165, has accordingly been thought unexplainable by the principles professedly adopted in the case itself. Certain jibs making part of an entire machine, which was clearly a fixture, were treated as mere personal property. *See Amos & Ferrard on Fixtures, p.* 4, *note* (*a.*)

The ancient distinction, however, between actual annexation and total disconnection is the most certain and practical ; and

should therefore be maintained, except where plain authority or usage has created exceptions. The reasoning of Mr. Dane, and of the learned judge in *Farrar* v. *Stackpole*, before cited, while it can not be too extensively applied to modern machinery in subordination to that distinction, does not appear to be sustained by authority, when it seeks to raise a general doctrine of constructive fixtures, from the moral adaptation of what is in fact a mere moveable, to the carrying on a farm or factory, &c. however essential the moveable may be for such purpose. The argument in that shape proves too much. Such adaptation and necessity might be extended even to the use of domestic animals on a farm, and certainly to many implements in a manufactory which could never be recognized as fixtures, without utterly confounding the rule by which the rights of the *heir* or the *purchaser* have been long governed. The judicial application of the rule is already sufficiently nice and difficult. As between heir and executor, it was partially altered by 2 *R. S.* 24, § 6, *sub.* 4, *2d ed.* By this, " things annexed to the freehold, or to any building, for the purpose of trade or manufacture, and not fixed into the wall of a house, so as to be essential to its support," pass to the executor. And see 3 *id.* 638, 9, *2d ed. Appendix.* This provision certainly indicates any thing but a legislative intent to enlarge the rights of freehold. Taken literally, it would strip the heir, of the wheels, gearing and all the other machinery fixed in the ordinary way to a mill or manufactory inherited by him. It is certainly contrary to the ancient common law ; *see* 11 *Vin.* 167, *Executor (Z) pl.* 6 ; *Amos & Fer. on Fixt.* 133, *and cases there cited on to p.* 138 ; and seems to derive very questionable countenance from more modern authority. *Squire* v. *Mayer*, a short note of which is given in 2 *Freem.* 246, goes the farthest towards our statute rule ; but how very doubtful this and some other modern causes of the like tendency are, may be seen by *Amos & Fer. on Fixt. ch.* 4, § 2, *p.* 151, *and cases there cited.* See also *Gibbons on Fixt.* 11, 12. As between devisee and executor, the suggestion of Vice Chancellor Hart in *Lushington* v. *Sewell*, 1 *Sim.* 435, 480, seems to go beyond any adjudged

case in favor of the freehold. He inclined to think that the devise of a *West India estate* would pass the incidental stock of slaves, cattle and implements ; because such things are essential to render the estate productive ; and, denuded of them, it would be rather a burden than a benefit.

It is, I think obvious, not only from our statute, but from both the English and American cases, that there is a stronger tendency to consider fixtures for the purposes of trade as mere personal property, than we find either in regard to those of an agricultural or domestic character. *See Gibbons on Fixt.* 10, 11. *Amos & Fer. on Fixt* 138, *ed of* 1830. By several English cases cited in these treatises, the executor was in respect to trade fixtures preferred in his claim against the heir, though the doctrine is far from being settled. By several American cases, we have seen that such fixtures were denied to have passed even as between the vendor and vendee of the freehold ; though such a rule derives no countenance, or certainly very little from any English authority ; and seems to be against the weight of American adjudication.

On the whole, I collect from the cases cited, and others, that, as a general rule, in order to come within the operation of a deed conveying the freehold, whether by metes and bounds of a plantation, farm or lot, &c., or in terms denoting a mill or factory, &c. nothing of a nature personal in itself will pass, unless it be brought within the denomination of a fixture by being in some way permanently, at least habitually, attached to the land or some building upon it. It need not be coustantly fastened. It need not be so fixed that detaching will disturb the earth or rend any part of the building. I am not prepared to deny that a machine moveable in itself, would become a fixture from being connected in its operations by bands, or in any other way, with the permanent machinery, though it might be detached, and restored to its ordinary place, as easily as the chain in *Farrar* v. *Stackpole.* I think it would be a fixture notwithstanding. But I am unable to discover, from the papers before us, that any of the machines in question before the

commissioners were even slightly connected with the freehold. For aught I can learn, they were all worked by horses or by hand, having no more respect to any particular part of the building, or its water wheel, than the ordinary moveable tools of such an establishment. These would have their common place, and be essential to its business. So a thrashing machine, and the other implements of the farmer. But it would be a solecism to call them fixtures, where they are not steadily, or commonly attached, even by bands or hooks, to any part of the realty. The word *fixtures* is derived from the things signified by it being fastened, or *fixed.* " It is a maxim of great antiquity, that whatever is *fixed* to the realty is thereby made a part of the realty, to which it adheres, and partakes af all its incidents and properties." *Toml. Law Dict. Fixtures.* Hence *fixtures* are defined to be " chattels or articles of a personal nature which have been affixed to the land." *Id.* " It is an ancient principle of law," says Weston, J. in *Farrar* v. *Stackpole,* "that certain things, which, in their nature, are personal property, when *attached* to the realty, become part of it as *fixtures.*" And see *Amos & Fer. on Fixt. ch.* 1, *p.* 1.

It is not to be denied that there are strong *dicta,* and perhaps we may add the principle of several adjudicated exceptions, upon which we might, with great plausibility, declare the machines in question, so essential to the purposes of the manufactory, although entirely dissociated with the freehold, a fit subject for entering into the list of constructive fixtures. The general importance of the rule, however, which goes upon corporal annexation, is so great, that more evil will result from frittering it away by exceptions, than can arise from the hardship of adhering to it in particular cases.

Nor can we possibly say, as in the case of the steelyard or engine in the cotton manufactory, cited from *Caldecott,* that the machines in question must, in the nature of the thing, be annexed to the freehold. It appears, by the papers before us, that they have been used with the factory for several years, and have passed with it in conveyances. But the affidavits do not state that

The People *v.* Baker.

they are affixed in any way. They are treated by both parties, for aught I can see, as entirely detached, though the defendant ventures to express an opinion that some of them *constitute a part of the factory itself.* He gives no particulars, however, from which we can say they may make a part, any more than if they were so many chairs to sit on.

It is true, that this factory seems to have been pretty much dismantled, the principal part of its machinery has been treated as mere movables. Both the defendant and Mr. Smith, one of the commissioners, concur in stating that nothing about the factory was treated as a fixture, except the water-wheel, fulling-mill, dye-kettle, press, and tenter bars ; and Mr. Smith says the factory was impelled by a valuable water power. The suspicion would, indeed, be quite strong, from such facts standing alone, that at least, some of the important and valuable machinery excepted, might be brought within the legal notion of fixtures ; and yet the defendant himself has not ventured to state, as I can find, that any part of the particular machinery excepted from the report, was in the least dependent for its operation on the water-wheel or other permanent parts of the factory ; while Mr. Goodrich, one of the commissioners, says in his affidavit, that the excepted machinery was not *affixed* to the *building* or *land.* There the case is left ; not one of the deponents pointing out any connection whatever. No authority cited on the argument, nor any that I have seen, goes so far as to say that mere loose and moveable machines totally disconnected with, and making no part of the permanent machinery of a factory, can be considered a fixture even as between vendor and vendee. We think the motion must be denied with costs, and the report of the commissioners is confirmed.