## Voorhis *against* Freeman.

The criterion of a fixture in a mansion-house or dwelling is actual and permanent fastening to the freehold, but this is not the criterion of a fixture in a manufactory or a mill.

Machinery, which is a constituent part of the manufactory, to the purposes of which the building has been adapted, without which it would cease to be such manufactory, is part of the freehold, though it be not actually fastened to it; and this criterion has a place in questions between vendor and vendee, heir and executor, as well as debtor and execution creditor; but not between tenant and landlord, and remainder-man. *Ruled,* therefore, that a mortgage and sale of a lot and iron-rolling mill, with the buildings, apparatus, steam-engine, boilers, and bellows attached to the same, passed the entire set of rolls used in the mill, whether actually in place, or temporarily detached to make room for such as were; and that such rolls could not be seized and sold as chattels, on a *fieri facias* against the mortgagor.

ERROR to the District Court of *Allegheny* county.

This was an action of trover by A. L. Voorhis against John Freeman, for the conversion of one hundred and six soft and chilled rolls, which were part of the machinery of an iron-rolling mill situate in the city of Pittsburgh, and which were admitted to be of the value of $3863. The plaintiff claimed the property by virtue of a sheriff's sale under an execution on a judgment which he had obtained against Leonard Sample, a former owner of the mill. The defendant claimed it by virtue of a previous sheriff's sale and conveyance under a *levari facias* on a mortgage by Sample, in which the premises were described as "A lot or piece of ground with one iron-rolling mill establishment situate thereon, with the buildings, *apparatus*, steam-engine, boilers, bellows, &c., attached to the said establishment." The fact of demand and refusal as evidence of conversion, was admitted; and the questions simply were whether the rolls were real or personal property; and if the latter, whether they did not pass by the descriptive terms of the mortgage.

The court below (Greer, President) ruled both these points

against the plaintiff, instructing the jury that the property in dispute was a part of the realty, and passed by the sale upon the mortgage.

*M'Candless* and *Biddle*, for plaintiff in error. Unless the property which was the subject of this action were fixtures, they would not pass by a sheriff's sale of the estate upon which they were used. The rolls were not attached to the freehold; they were not in the housings; but were lying loosely in the mill, to be used or not in that mill or elsewhere, as the owner pleased. They were, therefore, not fixtures. *Amos on Fixtures* 5 ; 2 *Kent Com.* 343 ; 20 *Wend.* 638 ; 5 *Vern.* 136 ; 3 *Vern.* 421 ; 2 *Devereux* 376 ; 7 *Cow.* 319 ; 2 *P. A. Browne* 285 ; 1 *Har. & Johns.* 289 ; 2 *Peters* 137 ; 10 *Amer. Jurist* 153; 4 *Watts* 330.

But if the rolls were personal property, did they pass by the terms of the mortgage? The word rolls is not used in the instrument, nor any other signifying the same thing; and it is essential to the validity of a mortgage or transfer of personal property that it should describe it particularly. But even if the mortgage did describe the property, it would be void for the want of a delivery of possession. 16 *Wend.* 513 ; 14 *Mass.* 352; 5 *Serg. & Rawle* 218; 12 *Wend.* 295.

*Craft* and *Loomis*, for defendant in error, argued that rolls were essential to the use of the mill, which is the true criterion of a fixture. 1 *Chit. Gen. Prac.* 161 ; 20 *Wend.* 629 ; *Hilliard's Real Property* 16 ; 6 *Greenleaf* 159 ; 6 *Cow.* 665 ; 1 *Missouri Rep.* 620 ; 1 *Bayley* 540 ; 10 *Amer. Jurist* 58 ; 6 *Greenleaf* 429. Fixtures will pass by a mortgage without being particularly mentioned, as much as by a deed. *Amos on Fixtures* 188 ; 15 *Mass.* 159 ; *Petersdorf Ab.* 702 ; 5 *Eng. Com. Law* 167 ; *Gib. on Fix.* 45 ; 5 *New Ham.* 54. Where there is no conflicting claim, a transfer of personal property without delivery of possession is necessarily available, for if it be good as to the mortgagor, it is good as to every one else, and in this case the sale was made on the mortgage before the property was levied on by the *fieri facias,* and after a sheriff's sale the property may be left in the possession of the defendant. 2 *Penn. Rep.* 81.

The opinion of the Court was delivered by

GIBSON, C. J.—It is true we ruled in an unreported case, (*Chaffee* v. *Stewart*) that the spindles and other unattached machinery in a cotton-mill, were personal property for purpose of execution, on the authority of certain decisions to that effect, because we were indisposed to be wise above what is written; but an examination of their foundation would probably have led us to a different conclusion. It is unnecessary to pass the learning of the subject in review, as a clear bird's-eye view of it has been spread

[Voorhis v. Freeman.]

before the profession by Mr Justice Cowen in *Walker* v. *Sherman*, (20 *Wend.* 636), from which it is evident that no distinctive principle pervades the cases universally, and that the simple criterion of physical attachment is so limited in its range, and so productive of contradiction even in regard to fixtures in dwellings to which it was adapted before England had become a manufacturing country, that it will answer for nothing else. My objection to the conclusion drawn from it in that case, is that the court adhered to the old distinction when the question related to a woollen factory, instead of following out the principle started by Mr Justice Weston in *Farrar* v. *Stackpole*, (6 *Greenleaf* 157), which must, sooner or later, rule every case of the sort. The courts will be drawn to it by its liberality and fitness, while they will be drawn away from the old criterion by its narrowness and want of adaptation to the business and improvements of the age. By the mere force of habit, they have adhered to it in almost all cases after it has ceased to be a guide in any but a few; for nothing but a passive regard for old notions could have led them to treat machinery as personal property when it was palpably an integrant part of a manufactory or a mill, merely because it might be unscrewed or unstrapped, taken to pieces, and removed without injury to the building. It would be difficult to point out any sort of machinery, however complex in its structure, or by what means soever held in its place, which might not with care and trouble be taken to pieces and removed in the same way, and the greater or less facility with which it could be done, would be too vague a thing to serve for a test. It would allow the stones, hoppers, bolts, meal-chests, skreens, scales, weights, elevators, hopper-boys, and running gears of a grist-mill, as well as the hammers and bellows of a forge, and parts of many other buildings erected for manufactories, to be put into the class of personal property, when it would be palpably absurd to consider them such. If physical annexation were the criterion in regard to such things, the slightest tack or ligament ought to constitute it; else if we were to get away from it even ever so little, we should have no criterion at all. There are so many fashions, methods, and means of it, and so many degrees of connexion between material substances, that there is nothing about which men would more readily differ than whether a thing held by a band or a cleet were permanently annexed to the freehold, or only for a season; and the proof of this is seen in the results of the decisions professedly regulated by it. To avoid discrepance, it would be necessary to hold the slightest fastening to be sufficient, but to exclude from the character of real property, as well every thing constructively attached to it by the nature of the thing, as every thing held to the ground by the attraction of gravitation. Thus cleared of its exceptions, the rule of physical annexation, though at best a narrow one, might furnish a criterion of universal application, though without them, it would make

havoc of the cases already decided, and indeed produce the most absurd consequences by stripping houses of their window-shutters and doors, and farms of the houses themselves.   When, therefore, we reflect on the necessary exceptions to the rule, as well as the cases of constructive attachment without the semblance of a tack or ligament, we are not surprised at the confusion and embarrassment in which we are left by the decisions.   The inherent imperfections of the rule required so many exceptions to it in order to avoid absurdity and injustice in its application, that it has almost ceased to be a rule at all.   Being purely artificial, and having no regard to the purposes for which capital is invested, a rigid application of it would be ruinous to the manufacturer.   In Pennsylvania, where a statute directs that real estate shall not be sold on execution before the rents, issues, and profits, shall have been found by an inquest insufficient to satisfy the debt in seven years, not only might this conservative provision be evaded, but a cotton-spinner, for instance, whose capital is chiefly invested in loose machinery, might be suddenly broken up in the midst of a thriving business, by suffering a creditor to gut his mill of every thing which happened not to be spiked and riveted to the walls, and sell its bowels not only separately but piecemeal.   A creditor might as well be allowed to sell the works of a clock, wheel by wheel.   His interest, it may be said, would forbid him to do so; but in the case of a manufactory, he would often be compelled to sell a part, or to sell many times the worth of the debt, and none but a person entering into the business would purchase either a part or the whole.   The sacrifice that would be induced by either course, is incalculable; but that is not all.   The bare walls of the building would be comparatively of little value.   They might perhaps answer the purposes of a barn; but so might the walls of a dwelling, when deprived of their doors and windows, and why are these considered a part of a dwelling?   Simply because it would be unfit for the purposes of a dwelling without them.   What, then, is demanded in the case of a building erected for a manufactory, but an application of the same principle?   Whether fast or loose, therefore, all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold. . This is no more than an enlargement of the principle of constructive attachment; and it is the principle of *Farrar* v. *Stackpole,* glanced at by Lord Mansfield in *Lawton* v. *Lawton,* (1 *H. B.* 259 *note,*) who seems to have foreseen its day.   I speak not here of questions between tenant and landlord or remainderman, but of those between vendor and vendee, heir and executor, debtor and execution creditor; and between co-tenants of the inheritance.   With this limitation, nothing said or done by this court, except its decision in *Chaffee* v. *Stewart,* already mentioned, and an obiter recognition of an adverse decision, by the judge who delivered the opinion of the court in *Gray* v. *Holdship,* (17 *Serg. &*

[Voorhis v. Freeman.]

*Rawle* 415,) will be found to conflict with the principle proposed. Certainly nothing else ever said by us gives countenance to the notion that the rolls of an iron-mill may be seized and sold as personal property.

But such rolls, being adapted to the manufacture of bars of different shapes and sizes, cannot all be used at once; and according to the ordinary criterion, only those in place and fixed for use would be deemed a part of the mill. But by the criterion proposed, they must be deemed equally a part of it when unfixed to give place to others; for a rolling-mill without rollers for all work, would be as incomplete as a hatter's shop without blocks for all heads. By this, however, I mean not to be understood as intimating that any such block is part of the realty. On the principle, then, that a thing temporarily severed from the freehold does not cease to belong to it, the whole set must be considered a part of the mill. Some two or three of these rolls, however, were duplicates; but all of them had, at one time or another, been in actual operation, and it is impossible to say which were the proper members of the set, and which the supernumeraries. But even if that could be told, all might nevertheless be deemed a part of the mill, seeing that they are often broken and cannot be instantly replaced if they are not kept ready on hand. Duplicates necessary and proper for an emergency, consequently follow the realty on the principle by which duplicate keys of a banking-house, or the toll-dishes of a mill, follow it.

We are of opinion, therefore, that the rolls in question passed as a part of the freehold by the mortgage and sale on the *levari facias;* but that if they had not passed, they could not have been sold as chattels on the plaintiff's *fieri facias* against the mortgagor: and were it necessary, we would further hold that they might have passed, had they been chattels, by force of the word apparatus in the description of the premises. On all these points the case is with the defendant.

Judgment affirmed.