## ISAAC WINSLOW & others vs. THE MERCHANTS INSURANCE COMPANY.

Fixtures, and additions in the nature of fixtures, which are placed in a building by a mortgagor, after he has mortgaged it, become part of the realty, as between him and the mortgagee, and cannot be removed or otherwise disposed of by him while the mortgage is in force.

A steam engine, boilers, &c. and machinery adapted to be moved by such engine, by means of connecting bands and other gearing, which are placed in a building designed for the manufacture of steam engines and other heavy iron work, are fixtures, or in the nature of fixtures.

A mortgage of a building, " and also such tools, and other property as is now contemplated to be placed in said building," with a covenant that the instrument shall be effectual to create a lien on such property, does not create a lien on the property afterwards placed in the building, but is void for uncertainty, as against a mortgagee of the property, whose mortgage is executed after the property is placed in the building.

A mortgage of all the goods, &c. in and about a certain building, with a provision that a schedule of the articles shall be annexed, is valid as to all the articles that can be identified, though no schedule thereof is ever annexed to the mortgage.

TROVER for " a steam engine, two boilers and fixtures, a blowing cylinder pipe, &c. a trip-hammer and fixtures," and a great number of tools, &c.

It appeared on the trial before *Shaw*, C. J. that on the 25th of February 1836, James M. Pond of Boston gave a mortgage to the defendants of his lot of land and building on Hawley Street, to secure the payment of $6000 ; and that on the 24th of May 1836, he made a further mortgage thereof to the defendants, " and with all and singular the machinery, tools, goods, chattels and other property therein contained, together also with all the machinery, tools, apparatus and other property, whether fixtures or otherwise, now being and remaining on the premises, and also such other machinery, engines, tools, and other property as is now contemplated to be placed in said building : The said Pond covenanting and agreeing that this instrument shall be effectual to create a lien or mortgage on such machinery, engines, or other property hereafter to be placed in said building, and that he will, moreover, in order to remove all doubt in the premises, at any time hereafter, when said machinery, engines, or other property, now contemplated to be placed in said build-

ing, shall have actually been placed there, make and execute any instrument or instruments sufficient and effectual to confirm the said title and effectually to create a lien or mortgage on said property so hereafter to be placed in the building aforesaid." This last mortgage was recorded by the city clerk, on the day after its date, and in the registry of deeds for the county, on the 7th of September 1838. At the time when it was made, said Pond occupied a shop in Water Street, in which were some of the articles which he afterwards removed into said mortgaged building ; but most of the articles which he put into the building, were purchased or manufactured by him after said mortgage was made.

On the 18th of October 1837, said Pond gave to the plaintiffs a mortgage of property which was thus described : " All and singular the goods, wares, stock, iron tools, manufactured articles, and property of every description, being situate in or about the shop or building now occupied by me in Hawley Street in the city of Boston ; a particular schedule of which shall be annexed hereto as soon as conveniently may be." This mortgage was recorded, on the same day, by the city clerk, but a schedule of the articles mortgaged was never annexed.

The building aforesaid was constructed for a machine shop, and the principal business done in it was the manufacture of steam engines and boilers, and other heavy iron work. There was a steam engine therein, which carried the whole machinery, in the several stories of the building, by means of connecting bands, or otherwise. The frame of the engine was placed on a wooden block, which stood upon a stone on the ground in the basement, and the engine itself stood on two columns of iron which were connected, by bolts, with the timbers of the floor above. The blowing cylinder was in a frame of two wooden columns that were fastened by spikes to the same floor timbers ; and the pipe from the cylinder passed under ground. The trip-hammer rested on a heavy timber placed on a stone, and was secured by its own weight. The boilers were set in brick work, and were connected with the steam engine by a pipe bolted to the engine and to the boilers, and the whole power of the engine

was exerted by means of. this pipe. The brick work was con·nected with the building only by resting on the ground and by a small flue.

The said steam engine, boilers, cylinder and trip-hammer, and also many of the tools, &c. which are enumerated in the plaintiffs' writ and mortgage, were made and placed in said building after the 24th of May 1836, and before the 18th of October 1837 ; that is, after the execution of Pond's last mortgage to the defendants, and before the execution of his mortgage to the plaintiffs.

The plaintiffs took possession of the mortgaged property on the 2d of March 1838, and the defendants afterwards obtained possession thereof. The plaintiffs demanded the property of the defendants, who refused to give it up. It was thereupon agreed by the parties, that the property should be sold at auction, and that the proceeds of the sale should be taken as the actual value. All the articles, included in said mortgages, were sold accordingly, except the steam engine, blowing cylinder, &c.

After the chief justice had ruled various points which were raised at the trial, as to the construction and operation of the several mortgages, it was agreed by the parties, that a verdict should be taken for the plaintiffs for the sum of $4000, subject to the opinion of the whole court on the questions of law in the case ; and that the amount of the verdict should be altered according to the judgment of an assessor to be appointed by the court, if the parties should not agree ; or that a general verdict should be entered for the defendants.

This case was argued at the last March term.

*Cooke*, for the defendants. The steam engine, boilers, blowing cylinder, and the machinery and apparatus that were worked by the engine, passed by the first mortgage to the defendants. These were fixtures, and a part of the realty ; and though they were put into the building after it was mortgaged, the mortgagor had no legal control of them, as against the defendants. *Powell* v. *Monson & Brimfield Manuf. Co.* 3 Mason, 466. *Goddard* v. *Bolster*, 6 Greenl. 427. *Union Bank* v. *Emerson*, 15 Mass. 159. *Goddard* v. *Chase*, 7 Mass. 432. *Peirce* v. *Goddard*,

22 Pick. 559. *Farrar* v. *Stackpole*, 6 Greenl. 154. *Hunt* v. *Hunt*, 14 Pick. 386. The same articles, (if they were not part of the realty) and also all the others mentioned in the plaintiffs' writ, became the property of the defendants, by virtue of the second mortgage ; and therefore the provision for a further assurance was immaterial. It is sufficient to support a contract of sale, that the subject of sale may exist at a future time. Brown on Sales, 111. Long on Sales, (Rand's ed.) 288. *Foster* v. *Saco Manuf. Co.* 12 Pick. 454. *Glover* v. *Austin*, 6 Pick. 219, 221. *Lewis* v. *Lyman*, 21 Pick. 443. Pow. on Mortg. (Rand's ed.) 17, 18.

The plaintiffs were purchasers with express notice of the defendants' lien, and therefore cannot defeat that lien. The mortgagor would have been estopped by his mortgage ; and so are the plaintiffs who claim under him. *White* v. *Patten*, 24 Pick. 324. *Lawry* v. *Williams*, 1 Shepley, 281. *Somes* v. *Skinner*, 3 Pick. 60. *Fairbanks* v. *Williamson*, 7 Greenl. 100. *Taylor* v. *Needham*, 2 Taunt. 278. *Howard* v. *Tucker*, 1 Barn. & Adolph. 712.

The mortgage to the plaintiffs was inoperative, because a schedule of the articles was not annexed, according to the terms of the mortgage itself. The general words were of no effect.

*E. D. Sohier*, for the plaintiffs. The plaintiffs' mortgage included all the personal property which was in the building in Hawley Street, and they are entitled to recover for the conversion of all the articles that can be identified, although no schedule was annexed. *Brinley* v. *Spring*, 7 Greenl. 241. The defendants' mortgage, of May 1836, is to be regarded, in this suit, as a mortgage of personalty merely, for it was recorded as such by the city clerk, and not by the register of deeds, until after the execution of the mortgage to the plaintiffs. But as to the articles which were not in the building, but which it was contemplated to place there, that mortgage was void for uncertainty. Com. Dig. Grant, D. E. 14.

The hand tools and the machines which were used by bands connected with the engine, but which were not connected with the freehold, would not have passed by a deed of the building, if

they had been therein when the deed was made.   *Kirwan* v. *Latour,* 1 Har. & Johns. 291.   *Miller* v. *Plumb.* 6 Cow. 665. *Gale* v. *Ward,* 14 Mass. 352.   *Cresson* v. *Stout,* 17 Johns. 116.   The steam engine, boilers and blowing cylinders, were also personal property ; and, as between landlord and tenant, might be removed by the latter during his term : And a mortgagor, who puts such articles into a building after it is mortgaged, may remove them before the mortgagee takes possession.   *Gaffield* v. *Hapgood,* 17 Pick. 192.   *Van Ness* v. *Pacard,* 2 Pet. 137.   Amos & Ferard on Fixtures, (Am. ed.) 27, 28. *Union Bank* v. *Emerson,* 15 Mass. 159.

SHAW, C. J.   The court are of opinion that the steam engine and boilers, and all the engines and frames adapted to be moved and used by the steam engine, by means of connecting wheels, bands or other gearing, as between mortgagor and mortgagee, are fixtures, or in the nature of fixtures, and constituted a part of the realty ; and that as all these fixtures were annexed to and made part of the realty by the mortgagor, they are part of the mortgaged premises, and passed by the first mortgage to the defendants.

A different rule may exist, in regard to the respective rights of tenant and landlord, tenant for life and remainderman or reversioner, and generally when one has a temporary and not a permanent interest in land.   In those cases the rule, as to what shall constitute fixtures, is much relaxed in favor of those who make improvements on the real estate of others, for the purposes of trade or other temporary use and enjoyment.   *Gaffield* v. *Hapgood,* 17 Pick. 192.   But the case of mortgagor and mortgagee stands upon a different footing.   The mortgagor, to most purposes, is regarded as the owner of the estate ; indeed, he is so regarded to all purposes, except so far as it is necessary to recognize the mortgagee as legal owner, for the purposes of his security.   The improvements, therefore, which the mortgagor, remaining in the possession and enjoyment of the mortgaged premises, makes upon them, in contemplation of law he makes for himself and to enhance the general value of the estate, and not for its temporary enjoyment ; whereas a tenant, making

the same improvements upon the estate of another, with a view to its temporary enjoyment, must be presumed to do it for himself, and not for the purpose of enhancing the value of the freehold. This rule of course will apply only to that class of improvements consisting of articles added and more or less permanently affixed to the realty, in regard to which it is doubtful whether they are thereby made part of the realty or not, and when that question is to be decided by the presumed intent of the party making them. Take, for instance, the case of a dye-kettle set in brick work, which is for the time annexed to the freehold, but which may be removed without essential injury to the building, and so as to leave the premises in as good a condition, as if it had not been set. If so set by an owner of the fee, for his own use, it would, we think, be regarded as a fixture, an addition made to the realty by its owner, as an improvement, and would pass to the heir by descent, or to the devisee by will. But if the same addition had been made by a tenant for years, for the purpose of carrying on his own business, we think he would have a right to remove it, provided he exercise that right whilst he has the rightful possession of the estate, that is, before the expiration of his term. 17 Pick. *ubi sup.*

Supposing the point to be clear, on the one side, as between heir and executor, and on the other, as between tenant and landlord, how does it stand as between mortgagor and mortgagee ? In the case of *Union Bank v. Emerson*, 15 Mass. 159, it was held that such a kettle, set by the owner of the freehold, before the mortgage, could not be removed by the mortgagor, or taken as his personal property, but passed by the deed to the mortgagee. It was considered an immaterial fact, that the mortgage deed did not mention appurtenances ; probably upon the ground, that if the kettle was an appurtenance, and *à fortiori*, if it was parcel, it would pass without express words ; *Kent v. Waite*, 10 Pick. 138 ; and if it was neither, those words would not aid it We are aware that in giving the opinion in that case, it was stated by the court that if the defendant, after making the mortgage, had put in the kettle, they would have considered him authorized to remove it, before delivering possession to the

plaintiffs. There is manifestly some mistake in this statement. It was *not the defendant* who made the mortgage ; he was a purchaser of the kettle, the same having been removed by the mortgagor, after the plaintiffs took possession, and been sold by him to the defendant. But supposing, as is rather to be inferred from the context, that if the kettle had been put in by the mortgagor after the mortgage was made, the mortgagor would have had a right to remove it ; it is to be remarked that no such point was decided by the court, nor was it necessary, upon the facts of that case ; and from the whole tenor of this very short report, it seems probable that the point was not much considered.

In the recent case of *Noble* v. *Bosworth*, 19 Pick. 314, it was held that such kettles, erected by the owner, were to be deemed part of the realty and to have passed by a general deed of the estate, unless specially excepted. There the case of *Union Bank* v. *Emerson* was alluded to ; but the point was not then material, and the court expressly avoided giving any opinion, either affirming or calling in question its authority as to the present point of inquiry, by stating that whatever doubt there might be as to such fixtures, erected by a tenant on leased premises, *or by a mortgagor*, after the estate had been mortgaged, there was none when erected by an owner.

It is obvious that this question cannot arise where there is any express stipulation in the mortgage deed, declaring either that such improvements to be made, and which are in their nature equivocal, shall, or not, be deemed fixtures, and be bound as part of the realty. The question is, what is the reasonable and legal construction of a deed, granting an estate in mortgage, in the usual terms, where there is no stipulation on the subject. Such a deed must of course include all additions which become *de facto* part of the realty, and which are not in their nature equivocal ; because a title to the whole, includes every part. In regard to articles doubtful in their nature, we have already stated as our opinion, that if added by the mortgagor, it is to be considered as done by way of permanent improvement, for the general benefit of the estate and not for its temporary enjoyment. *Hunt* v. *Hunt*, 14 Pick. 386. One of the objects, and indeed

one of the most usual purposes of mortgaging real estate, is to enable the owner to raise money to be expended on its improvement. If such improvements consist in actual fixtures, not doubtful in their nature, they go of course to the benefit and security of the mortgagee, by increasing the value of the pledge. The expectation of such improvement and such increased value often enter into the consideration of the parties, in estimating the value of the property to be bound, and its sufficiency as security for the money advanced. And we think the same rule must apply to those articles which in their own nature are doubtful, whether actual fixtures, or not, on the ground of the presumed intention of the parties. A presumption arises from the relation in which they stand, that such improvements are intended to be permanent and not temporary, and that the freehold and the improvements intended to be made upon it are not to be severed, but to constitute one entire security. The mortgage is usually but a collateral security for money which the mortgagor binds himself to pay, and is therefore a hypothecation only, and not an alienation of the mortgaged estate. And in this respect the distinction, between the tenant for years and the mortgagor, is broad and obvious. The tenant for years can have no benefit from his improvements after the expiration of his term, but by his right to remove them, when they are capable of removal, but the mortgagor has only to pay his debt, as he is bound to do, and as it is presumed he intends to do, and then he has all the benefit of his improvements, in the enhanced value of the estate to which they have been annexed. The latter, therefore, may be presumed to have intended to annex the improvements to the freehold and make them permanent fixtures ; whilst the former must be presumed, from his obvious interest, to erect the improvements for his own temporary accommodation during his term, intending to remove them before its expiration.

The case of *Gale* v. *Ward*, 14 Mass. 352, is not, we think, an authority opposed to this opinion ; because it is manifest that the court, in that case, regarded the carding machines, though ponderous and bulky, as essentially personal property which might have been attached and removed as the personal property

of the owner, even though there had been no mortgage; and they had been erected by the owner in his own mill, for his own use.

As to what shall be deemed fixtures and part of the realty, when the question does not arise as between landlord and tenant, or tenant for life and remainderman, in regard to improvements made by the tenant, it is difficult to lay down any general rule, which shall constitute a criterion. The rule that objects must be actually and firmly affixed to the freehold, to become realty, or otherwise to be considered personalty, is far from constituting such criterion. Doors, window blinds and shutters, capable of being removed without the slightest damage to a house, and even though at the time of a conveyance, an attachment or a mortgage, actually detached, would be deemed, we suppose, a part of the house, and pass with it. And so, we presume, mirrors, wardrobes, and other heavy articles of furniture, though fastened to the walls by screws, with considerable firmness, must be regarded as chattels. The difficulty is somewhat increased, when the question arises in respect to a mill or manufactory, where the parts are often so arranged and adapted, so ingeniously combined, as to be occasionally connected or disengaged, as the objects to be accomplished may require. In general terms, we think it may be said, that when a building is erected as a mill, and the water works, or steam works, which are relied upon to move the mill, are erected at the same time, and the works to be driven by it are essential parts of the mill, adapted to be used in it and with it, though not at the time of the conveyance, attachment or mortgage, attached to the mill, are yet parts of it, and pass with it by a conveyance, mortgage or attachment. *Powell* v. *Monson & Brimfield Manuf. Co.* 3 Mason, 466. *Farrar* v. *Stackpole*, 6 Greenl. 154. *Gray* v. *Holdship*, 17 S. & R. 415. *Voorhis* v. *Freeman*, 2 Watts & Serg. 116.

In the present case, we are of opinion, upon the evidence submitted to the court, that the engine and boilers, and the machines for working iron, upon which they operated, considering the manner in which they were fitted and adapted to the mill,

were fixtures, and part of the realty, and were of course covered by a mortgage of the real estate.

We are also of opinion that all articles of stock, such as iron and coal, and all materials to be wrought, and the hand tools, and all implements not driven by the steam engine, and articles not annexed to the building, nor embedded in the ground, nor constituting parts of such mill, are to be deemed personalty, and not realty, and did not pass by the first mortgage to the defendants.

In regard to the second mortgage, as far as it is a mortgage of real estate, it is not material whether the first registration was good, or not : because the plaintiffs have no claim to the real estate. But it is contended on the part of the defendants, that the mortgage deed to them, of May 26th 1836, was a mortgage both of real and personal property ; that it was duly registered as a mortgage of personal property, in the city clerk's office, long before the plaintiffs' mortgage, and was therefore sufficient to bind the personal property.

We think there is a satisfactory answer to this claim, furnished by the facts. This deed purported to be a second mortgage of the real estate before mortgaged to the defendants with all and singular, the machinery, tools, goods, chattels and other property therein contained, together with all the machinery, tools, apparatus and other property, whether fixtures or otherwise, *now being* or remaining on the premises, and also all other machinery, engines, tools and other property, *now contemplated to be placed* in said building ; said Pond, the mortgagor, warranting and agreeing, that said instrument should be effectual to create a lien or mortgage on the machinery and tools afterwards to be placed in said building ; and he moreover stipulated, to remove all doubt, after the machinery and tools should have been actually placed therein, to execute any instrument which should be effectual and sufficient to create a lien and mortgage thereon.

In point of fact, at the time of executing this instrument, the building had not been erected, and no machinery or tools whatever were then placed in it   In truth, a considerable part of

those claimed in this action were not then in existence, but were manufactured afterwards. " Articles contemplated to be placed therein," though then in existence, without any schedule, enumeration or specification whatever, is, as a description, far too indefinite and uncertain to constitute a lien upon the articles afterwards actually placed in the building. The circumstance that some of the articles were in use by the mortgagor, at a shop occupied by him in Water Street, and were afterwards removed to the shop in Hawley Street, cannot bring them within the description, vague as it is ; because many of the articles, so used at the shop in Water Street, were not removed ; others were purchased or manufactured afterwards ; and therefore it still remains wholly uncertain which of them were " contemplated " to be put into the new building. The stipulation of the mortgagor *to* execute *a further instrument of hypothecation,* when the articles should be put in, and thus made certain, was a good executory contract, binding upon the covenantor personally, and for a breach of which he might have been liable in damages, but not an executed contract, constituting a lien *de facto* upon articles not then bound by the mortgage.

It was objected to the plaintiffs' mortgage, that it was invalid, because there was no schedule annexed, according to a stipulation contained in it. But the court are of opinion that it was good and available for all the articles which were in the shop at the time it was executed, so far as they remained and could be identified, although no schedule was annexed. The reference to a schedule to be annexed was not to limit or restrain the generality of the previous description of the property, but it was to be inserted for greater certainty and exactness, and the better to enable the mortgagee to identify the articles. It was not, therefore, essential to the validity of the mortgage.

[This case was adjusted by the parties, on the principles of the foregoing opinion, and judgment was entered for the plaintiffs, for the sum of $ 1161·05.]