## Taylor *against* Hulme.

*Quære,* whether proceeds of sales made by assignees of goods transferred to them under a void assignment can be attached in their hands by execution in nature of an attachment.

They cannot, where the interest of the debtor in the goods has been previously levied on by the plaintiff in execution, and released on a bond given by the assignees to pay their value in case the assignment is declared void, which bond is afterwards forfeited and paid.

If, however, a second assignment be made after the sale of the goods by the assignees, passing all the claims and rights of the assignor, it is clear a subsequent attachment is too late to affect them.

Proof of a sale of personal property under a judgment and execution between other persons, and that it was bought in and held for six years and then sold again, is admissible.

ERROR to the Common Pleas of *Bucks* county.

Michael Taylor and Edward L. Taylor, administrators of Anthony Taylor, deceased, against William Hulme and Joseph Canby, garnishees of John Hill.

This was an execution in nature of a foreign attachment under the 35th section of the Act of 1836, at the suit of the plaintiffs against John Hill. The sheriff was directed to attach all debts, dues, goods, moneys and effects of Hill in the hands or possession of these garnishees, and particularly the proceeds of sale of certain running gears, &c., attached to a cotton factory in Hulmeville. The defendants pleaded that they had no property of Hill in their hands. The facts of this case appear in the opinion of the court. The case was argued by

*Ross* and *Dubois,* for plaintiffs in error.
*Chapman,* for defendants in error.

The opinion of the Court was delivered by

HUSTON, J.—The question in this case arose on the following facts. In 1830 Anthony Taylor erected a building on a stream

[Taylor v. Hulme.]

of water, which in 1831 was put in operation as a cotton factory by Allen Armstrong and Susanna M. Stanbridge, who had a lease from Anthony Taylor for 10 years. Susanna M. Stanbridge, Allen Armstrong and John Hill put all the machinery in the mill; Taylor only put in the upright shaft at the end of the mill and the wheels. It was occupied by the tenants until 1834. Allen Armstrong was then dead, and on suits against his executors for the price of machinery his right was sold at sheriff's sale and purchased by S. M. Stanbridge. After this, Miss Stanbridge took in John Hill as a partner; on what terms or what interest each had, does not distinctly appear. Somehow the lease was ended about 1834, and Miss Stanbridge and Hill gave a bond for rent in arrear $1342. In 1836 Miss Stanbridge and Hill purchased the mill from Taylor, and gave a mortgage for $26,000, and a judgment bond for $28,000. At that time, August 1836, they received a deed from Taylor, and they continued the factory.

On the 19th of May 1838, Miss Stanbridge being about to be married, conveyed to John C. Stanbridge and others, in trust for Frances Stanbridge, all her interest in the cotton factory, grist-mill and appurtenances. On the same day, she conveyed to John C. Stanbridge the machinery on the same trusts. By deed of 28th of September 1838, Frances Stanbridge and her trustees conveyed the machinery mentioned in the last deed to Thomas C. Stanbridge; and Thomas C. Stanbridge and John Hill carried on the factory until their assignment. Anthony Taylor had died in 1837. His administrators knew of all these assignments, and accepted the bond of Thomas C. Stanbridge and John Hill instead of the former bond of S. M. Stanbridge and Hill for the $1342, arrears of rent. Thomas C. Stanbridge gave or he was to give $8000; but it did not appear that he paid.

Thomas C. Stanbridge and John Hill made an assignment to Hulme and Canby of all the property of the firm of Stanbridge & Hill, in trust to pay off certain preferred debts, and to pay the balance among such creditors as would release in three months. The assignees accepted the trust, and the deed was recorded 31st of August 1839. An inventory embracing all the machinery, gearing, &c., in the cotton-mill, was filed 17th September 1839, and the creditors released on or before the 19th of November. To September term 1839, a *fieri facias* issued at the suit of A. Taylor's Administrators against Stanbridge & Hill. The sheriff was directed to levy on all the individual property of John Hill, and also on the share and interest of the said Hill in the property belonging to the copartnership of Stanbridge & Hill. On this the sheriff levied on all the machinery, mill-gearing, shafting, &c. Another execution issued on the large judgment of $28,000, same direction and same levy, subject to prior levy. On the 19th of September 1839, an agreement was made between Mr T. Ross, attorney for the administrators, and Mr M'Dowell, attorney for the assignees,

[Taylor v. Hulme.]

which set forth the levy, &c., and agreed that the said assignees should give a bond to the sheriff for the amount of the (first) execution, that an issue should be formed to try the validity of the assignment made by Stanbridge & Hill as aforesaid, and if determined in favour of the administrators, the bond to be in full force; if in favour of the assignees, the bond to be of no effect. The sheriff proved that he had all the machinery, &c., levied on the two executions. That he did not sell them. The levies were released by Mr Ross. He sold the individual property of Hill, which produced a small sum. The feigned issue was formed, tried and decided against the assignees, and *they paid the bond.*

In the mean time Stanbridge & Hill made a new assignment on the 23d of December 1840, of all their property to same assignees in trust for their creditors. This was admitted to be formal and legal. They proceeded and sold all the spinning, weaving and gearing machinery. The real estate was sold on the mortgage and purchased by C. N. Taylor for Mary Taylor on the 27th of January 1841, for $14,000. Another execution issued on the larger judgment, and under the 35th section of the Act of 1836, concerning executions, the sheriff, as directed by the attachment clause, attached the whole of the machinery before released. At the sale of the machinery by the trustees the administrators of Taylor were present, and made no objection. C. N. Taylor gave notice for S. M. Stanbridge or her trustees that Hill had no interest, but the property was in the administrators. By the Act of Assembly the person in whose hands property, money or a debt is attached on the clause in a *fieri facias,* may appear as a garnishee in a foreign attachment and answer or plead.

Hulme & Canby appeared and pleaded that they had no property or money of John Hill. It seems to have been admitted that after the trustees had given their bond to the sheriff, and the executions were, as to this machinery, &c. &c., released, the trustees proceeded and sold the goods in question, and this before the second assignment on the 23d of December 1840, and long before they were attached, or rather before the proceeds of them were attached by the present proceedings.

The court, after stating the facts minutely, and disposing of some preliminary objections made by the defendants, proceeded: "The plaintiffs ask us to instruct you: 1. That by the assignment made by Stanbridge & Hill, the machinery in the factory was not conveyed to them, and that the proceeds of the machinery made by them they were to hold, not as assignees, but in their individual capacity. 2. That by the execution of the second assignment of 23d December 1840, and the acceptance of it by the assignees, all legal rights under the previous assignment were surrendered. That the decision of the first assignment by the Court of Common Pleas, rendered it null and void as regards creditors and others interested in the property. In answer to these several

[Taylor v. Hulme.]

points, the court say that this whole proceeding of attaching debts was unknown to the common law, and was only brought into use by the 35th section of the Act of 1836, which is in these words: 'In the case of a debt due to the defendant, or of a deposit of money made by him, any goods and chattels pawned, pledged or demised as aforesaid, the same may be attached and levied in satisfaction of the judgment in the manner allowed in the case of foreign attachment.' It is a well-settled principle that where a person holds money as executor, administrator or trustee, it was not subject to foreign attachment. Here the garnishees owed no debt to the defendant Hill. Although the deed of assignment was void as to creditors, it was good between Hill and his assignees. They had received the money in their fiduciary capacity, and as such it was not subject to attachment. Hulme & Canby owed no debt to John Hill. They were bound to account as trustees for the sale of the machinery, and whether that sale was right or wrong in the judgment of the court, it cannot be tried in this suit and in this way, and this case is not within or provided for by the 35th section of the Act of 1836. The plaintiffs have mistaken their remedy, and cannot maintain this attachment and *scire facias* against the defendants under the facts disclosed in evidence."

The errors assigned were to this part of the charge.

The allegation that the proceeds of their sale were not received in their fiduciary capacity, seems a mistake of fact. The second assignment was not produced; it was stated to be in the usual form, and no objection to it. Now it was not even alleged that it did not or could not assign the debts due from those who purchased this machinery. The deed was stated in plaintiff's paper-book to convey everything real and personal belonging to Stanbridge & Hill to those assignees in trust for their creditors. As the second assignment was prior to the last execution or attachment, it was a mistake to suppose it could not pass all Stanbridge's & Hill's rights of every kind, which they could sell or dispose of. Whether in a direct suit of any kind the defendants were answerable for the price of these goods, is not the question.

The Act of 1836, section 35, was not intended to come in place of the common law remedies in case of alleged irregular sales or transfers of property. No doubt all illegal and fraudulent transfers to injure creditors can be reached and will be unravelled, and our books show this; but it could not have been intended this should be done in this way, without a declaration or appropriate pleadings, or notice beforehand, or trace left on the record of what was decided, or why it was decided. Nor was it intended in a suit between A and B to decide the rights of C and D and others. An execution has been called the end of the law, and so it will be, if defendant's goods, or under this Act debts due to defendant, are levied; it is not every alleged claim of every defendant which

[Taylor v. Hulme.]

could be properly attached under this law; much less is it every property which ever belonged to the defendant, but which he transferred at any time in trust, and in which he has only a residuary interest after the trust is satisfied, which can be levied on; but it is not alleged there will be any residuary right in Hill or T. S. Stanbridge.

There are other circumstances. The plaintiffs had a levy on all this machinery, and on getting a bond for $1342, and its interest, they released it. The bond has been paid. Can they get the value of it a second time? Can they say we gave it up for too small a sum, and take it or the value of it a second time? They released it with knowledge of all the circumstances, with advice of their lawyer; no fraud, concealment or misrepresentation is even alleged. The court had stated all the facts, and on these, no one of which was disputed, the court said the plaintiffs could not recover in this case. I do not say the attachment on execution will lie in all cases in which foreign attachment will lie, but I incline to the opinion it will not lie in any case in which a direct foreign attachment would not lie if defendant had left the State.

The case of *Voorhis* v. *Freeman*, (2 *Watts & Serg.* 116), was mentioned. The decision in that case cannot help these plaintiffs. If this machinery was real estate, it must be sued for by the owners of real estate; but what is said above would seem to settle this point. The Taylors levied on this machinery as personal estate, and made an agreement by which they were paid for it as personal estate. Whatever other creditors could do, they can never, with any colour of justice, claim it or the price of it a second time.

There was another matter mentioned. A witness proved that after the death of Allen Armstrong his interest was sold by the sheriff and purchased by Miss Stanbridge; and it was said the judgment and execution should have been produced. If the heirs of Allen Armstrong had brought suit to recover this property, this would have been true; but after Miss Stanbridge had held the machinery six years and sold it, and it sold again, this proof of her purchase by parol was entirely sufficient in this case between these parties.

Judgment affirmed.