STONEY and another, Executors, &c. v. THE AMERICAN LIFE INSURANCE AND TRUST COMPANY and others.

Where an injunction is issued to restrain a foreign banking company from proceeding to foreclose a mortgage given as security for their certificates and there is a serious question as to the transaction not being within the spirit of the restraining act against unauthorized banking and the circulation of certain notes or evidence of debt issued by banks, (1 R. S. 712) the court will not dissolve the injunction on the coming in of the answer. (The court, however, in this case allowed a cross-bill to be filed by the company to sell the property embraced by the mortgage, inasmuch as the same might, otherwise, have been sacrificed.)

A foreign institution, on an application in New York to loan $100,000 at seven per cent. on bond and mortgage of property there, agreed to give their certificates to that amount bearing interest at five per cent. and a large portion of them payable in twenty years: such a transaction, *it would seem*, is usurious.

---

Nov. 14,
and 16,
1843.

Practice.
Injunction.
Restraining act.
Usury.
Corporation.
Foreign
Corporation.

Feb. 27,
1844.

MOTION to dissolve injunction on bill, answer and further answer.

The facts will be sufficiently found in the opinion of the court.

Mr. *William Betts* and Mr. *Benjamin F. Butler*, for the motion.

Mr. *D. P. Hall* and Mr. *D. D. Field*, in opposition.

THE VICE–CHANCELLOR:—We have here a motion, on the part of the American Life Insurance and Trust Company, to dissolve the injunction which at present exists to prevent the foreclosure of fifty-nine lots of land near Tompkins Square in the city of New York.

The facts appear to be these: Nicholas B. Stuyvesant, of

the firm of Dudley & Stuyvesant, executed a mortgage to John Stoney for one hundred thousand dollars on fifty-nine lots of ground to secure him for advances to the firm. He, relying upon the integrity of those gentlemen, did not take the precaution to put the mortgage on record. Afterwards, a mortgage was given by Dudley & Stuyvesant to Mr. Wilder for seventy-five thousand dollars on the same premises, and he, immediately, put it on record; and, finally, a third mortgage was given by them on the lots to Thomas E. Davis for twenty-five thousand dollars, which was also put on record—and before Mr. Stoney awoke to his danger the latter two mortgages were put in suit and foreclosure. The mortgagors set up a plea of usury on Wilder's bill, and Stoney was made a witness. It was supposed the parties would go on and make good their defence, so that Stoney would have precedence, but the defence was withdrawn and a decree was taken almost by default, by which Stoney lost the opportunity which had been promised. Under that decree, the property was sold and Thomas E. Davis became the purchaser for one hundred thousand dollars. The result would have been, if the sale had been made good, to cut out all claim of Mr. Stoney. The property, however, at that time (which was in 1838) was subject to the redemption law; and of that right they could not deprive Mr. Stoney, In consequence of that, some arrangement was made, by which, if any thing could be made, over the two mortgages, Stoney was to have had the benefit of it, as the property was supposed to be worth much more than one hundred thousand dollars. Accordingly, an arrangement was made between Wilder and Davis and the assignees of Dudley and Stuyvesant, by which Mr. Stoney might have such benefit, by paying off the prior incumbrances (that is, the two mortgages); and Mr. Davis became the agent to negotiate a loan and satisfy the mortgages.

He applied to the American Life Insurance and Trust Company for a loan, not of money, but of their certificates of deposit for one hundred thousand dollars on the security of the property; and the company loaned its certificates to that amount—some payable in one year, but others (a large amount) payable in twenty years and bearing an interest of

five per cent. It is alleged in the bill that these certificates of deposit were depreciated and could not be sold at any thing like their par value; and that they were issued for the purpose of enabling Davis to pay off his own and Wilder's mortgages. The twenty year certificates were drawn in sterling money and sold in London at a loss of fifteen per cent—and those for one year sold here at a loss, but less in amount.

The question is, whether the American Life Insurance and Trust Company, being a foreign institution chartered in Maryland, did not bring themselves by this transaction within the provisions of the restraining law?

These certificates professed to be based upon actual deposites of money made with the company. The company was in the habit of receiving deposites and allowing five per cent. on them. I think a serious question arises, whether the issuing such certificates was not a violation of the statute? The certificates formed a piece of machinery, probably got up for the purpose, and contained a falsehood on their face, in saying there had been a deposit. But, if parties enter into a negotiation to take the certificates at their word and say they are evidences of deposit, is the company not bound to admit that they were engaged in such business, such company at the time being a foreign corporation and the loan and mortgage made in this city? The bill says, that their doing so was contrary to law. The bill does not say, it is true, that they opened an office in this city to do business as a bank—still, there is a question, whether the company have not brought themselves within the statute prohibiting transactions of that kind?

It is hardly necessary to take up time to speak of the provisions of the restraining law. The law, as enacted by the revised statutes, 1 vol. 712, has been modified by the act of 4th February, 1837, (Session's Laws of 1837, ch. 20, p. 14,) so far as to take off the prohibition from individuals, but then there is a saving clause that it shall not be construed to allow a corporation of another state or country to keep any office to receive deposits or discount or put evidences of debt into circulation as money. A good deal has been said as to what will constitute such an office; and the question

admits of much nice criticism. I do not intend to go into a definite opinion on the point. I consider it only necessary to show that the present case might, possibly, come within the provisions of this statute and that it is deserving of grave and serious consideration, whether the transactions of this company, by way of loan, based on deposits, are not prohibited by law and, therefore, void as to any person who has had such transactions with them? Cases in point are in the 17th and 25th Wendell on the subject of these restraining acts: *De Groot* v. *Van Duzer*, 17 Wend. 173; *New Hope Delaware Bridge Company* v. *Poughkeepsie Silk Co.*, 20 Wend. 648. In that of the *New Hope Delaware Bridge Company* it was held that a foreign corporation, having an office in this state, could not maintain an action here for money lent.

The bill shows that this company was engaged in business in New York; and whether this is a sufficient allegation or not is a question. All that I wish to say, at present, on this branch of the subject, is, that it presents a question whether the company are not within the statute; and, if so, whether it becomes expedient to dissolve the injunction?

It is contended, that this transaction of issuing and receiving a bond and mortgage of the same amount as the certificates—the first at seven and the other at five per cent. and depreciated, and which certificates were issued to raise money and a loss accrued in doing so of fifteen per cent.—is not a case of usury so as to avoid the contract.

There was a case decided in October last by the Assistant Vice-Chancellor of the eighth circuit in which this company were parties. It was on a bill filed by a judgment creditor of a person named Harrington to displace the mortgage so that his judgment could be operative against the premises. The ground taken was usury. It was a case in which the company had been applied to for a loan of money. They said, they had no money, but they would issue certificates of deposit and loan them, and the borrower Harrington was referred to a broker who might be prevailed upon to come to the office and deposit a large amount such as the applicant wanted and, on that, the Company would issue. He applied to the brokers and they consented and deposited twenty-five

thousand dollars or fifty thousand dollars. The broker was willing to go and deposit for twenty years or five years and receive certificates at five per cent. The certificates were actually handed to the borrower, who gave his bond and mortgage at seven per cent. The Assistant Vice-Chancellor went fully into the case to show how it took place. He came to the conclusion that the transaction was usurious, as there was no application of money but, instead of that, certificates of deposit at five per cent., for which the borrower gave bond for seven per cent., and was not only subject to the loss of two per cent. but to a depreciation of fifteen per cent. on the certificates besides. These he considered sufficient to support the charge of gross usury.

In the recent case of *The Farmer's Loan Company*, I came to the conclusion that there was no usury, because it was simply an exchange of notes. Mr. Minturn gave his note to the company and received bonds for a like amount, both maturing at the same time, the one drawing five and the other seven per cent. interest and being a mere exchange of paper with a difference of only two per cent. I did not consider it usurious. But, where the certificates are issued for twenty years at five per cent. interest in exchange for securities of one year at seven per cent., the company obtains a vast advantage. They have the money to use nineteen years, while they are paying only five per cent.

I apprehend, in this case, if the complainants are in a situation to take advantage of usury, it presents a case where it may be important to consider whether the whole transaction is not affected? The question is to be considered before the subject is disposed of and the property subjected to a sale under the power contained in the mortgage, which I think it ought not to be. Could the complainant, then, take advantage of usury? The answer is put on the simple footing that Mr. Stoney was the purchaser of fifty-nine lots and received the certificates for one hundred thousand dollars, and executed the mortgage for the purchase money; that it was a transaction between Stoney and Davis and there was no connection with nor had it relation to the mortgage or these certificates. If that could be sustained, all danger as to the security might be done away. The title to

this property stood in the name of Messrs. Duer and Robinson, as trustees of the company after the certificates were issued to Davis, who became the purchaser of the property and applied for the loan; the deed was executed by a master in chancery, under Davis's purchase, as security for the loan. He gave his bond for ninety-five thousand dollars. So, the company held a deed in the name of Messrs. Duer & Robinson and also held Davis's bond, the deed being security for the bond. It so stood from one thousand eight hundred and thirty-eight to one thousand eight hundred and forty. Mr. Stoney having died and his executors living in Charleston, they come here to look after their property, and find it thus disposed of and that they could step in and pay off the amount obtained. The company, in their answer, deny that Mr. Davis was their agent; and say, they did know him but as an individual. They say, the executors wished the benefit of the arrangement of the year one thousand eight hundred and thirty-eight and asked the company to give up the property to them on executing the bond.

It does seem to me that the charge of usury attaches to the transaction; but 1 am not called upon, now, to give an opinion on that point.

It is contended by the bill that, as the American Life and Trust Company was unauthorized to do business in this state, the transaction is void as relates to the bond and mortgage in question; and that the company cannot give title. On the other hand it is said they are unconnected with the mortgage which was given to Messrs. Duer & Robinson, and, by them, passed to the company. I cannot consider, however, but that they are connected. Mr. Stoney having died at Charleston, his executors, the defendants, came on in relation to it. As the case stands, I am of opinion *it* would not be proper to remove the injunction and authorize a sale, for, as there are doubts in relation to the title, the property would probably be sacrificed. The defendants ought to have the liberty, however, to file a bill now, so *that*, when the question is settled, a sale may take place, if necessary, free from all possible difficulty.

Motion to dissolve injunction denied, but the defendants

*Margin note:*

1843.

STONEY
*v.*
LIFE INS. AND TRUST CO.

are to be at liberty to file a cross bill for the purpose of a sale and foreclosure of the mortgaged premises.