BURNSIDE *v.* TWITCHELL.

Buildings and mills erected by the mortgagor, on lands previously mortgaged, will be held by the mortgagee until his mortgage debt is paid. And the same is true of any personal property so annexed to the mill or building by the mortgagor and so used as to become fixtures or parts of the realty.

Mill saws purchased by the owner of a saw-mill for use therein, and actually attached to the mill, and thus used as a part of the mill, without any intention at the time of removing them, become parts of the realty, and pass by a conveyance of the land, unless reserved.

The same would be true of leather belting thus purchased and used in such mill, where the mill is so constructed that it can only be operated by such belts connecting the several parts of the machinery with the motive power.

But the fact that the owner of a saw-mill had purchased mill-saws for the purpose of using them in his mill, and kept them there a year or more, if they have never been attached to the mill or used therein, would not make such saws fixtures so as to pass with the mill.

Where a mortgagor annexed chattels to his mill and used them in such a way that they became fixtures, and afterward removed them while the mortgage remained in force, the mortgagee still retains his title to the property thus severed; and though he may bring trespass *quare clausum*, for entering and taking the property, he may also bring trespass *de bonis*, for taking and carrying it away, or trover against the mortgagor or any other person who converts it to his own use.

Where one who has no title to personal property mortgages it to secure a *bonâ fide* debt, and the mortgage is duly recorded, but the mortgagee has never had possession of such property, or asserted any right or claim to it, or intermeddled or interfered with it in any way, except to take said mortgage, he will not be liable for the same in trover to the true owner.

TROVER for 40 mill saws, 6 mill bars, 2 mill chains, 2 sets of tackle and falls, and a large quantity of belting. The plaintiff's writ is dated October 5, 1859. Plea, the general issue. Conversion by the defendants alleged on the 25th of March, 1857. On the 19th of July, 1854, and long before then, Hazen and Milton Chandler, and Dearborn, Benjamin F., and Amos C. Lary, were seized and possessed of certain lands in Milan and Success, in said county, and on said 19th of July, 1854, said Chandlers and Larys conveyed said premises in fee and in mortgage, to one Albert G. Lary, conditioned to pay the said Albert, his heirs and assigns, twelve thousand dollars, agreeably to the mortgagors' three promissory notes of that date, of $4,000 each, payable to the said Albert or bearer, in two, three, and four years respectively from date, with interest annually.

Said mortgage was duly executed and acknowledged on the same day, and recorded in the Coös Registry of Deeds, July 22, 1854. On the same 19th day of July, 1854, the said Albert G. Lary, for a valuable consideration, assigned and delivered said notes and mortgage to the plaintiff. Afterward, about the year 1855, said mortgagors built an extensive saw-mill on the mortgaged premises in Milan, for the purpose of manufacturing boards, clapboards, laths and shingles, and procured and put into said mill 24 of said saws, all of said bars, chains, tackle and falls, and the same were used in and about said saw-mill, as such articles are accustomed to be used, for about one year. The other 16 saws, composing the 40 sued for, were never used in, nor connected with said mill, although they were bought for that purpose. Prior to April 27, 1857, to wit, on the 1st day of December, 1856, the said Larys and Chandlers removed the saws from where they were situated in the mill, to a file room adjoining the mill, for safe-keeping; and they also removed the belting from the gearing, coiled it up, and laid it aside in the mill; and these articles remained in this condition until the same were taken by the said Larys and Chandlers, or some of them, and carried to Berlin Falls, N. H., where the same were duly sold on a chattel mortgage, by them, for a sufficient consideration executed and delivered to the defendants in due form of law, on the first mentioned day, which chattel mortgage was then properly recorded in the town-clerk's office in said Milan, where the mortgagors resided.

The plaintiff sued a writ of entry against the said mortgagors to recover the possession of the mortgaged premises, and the same having been duly served and returned, at the November term, 1856, of Coös court of common pleas, he recovered a conditional judgment therefor, and afterward the plaintiff sued out his writ of possession, which, on the 25th day of March, 1857, was executed by the sheriff, by delivering possession of the mortgaged premises to the plaintiff, and from thence hitherto the plaintiff has had the possession thereof, and the mortgage has not been paid or satisfied in any other way.

Before the commencement of this suit, the defendants, without the plaintiff's consent or knowledge, by virtue of the chattel mortgage aforesaid, duly sold and disposed of the said 40 saws for the sum of $140, and sold and disposed of said belting for the sum of $50; but without this they have in no way or manner disposed of or intermeddled with said property, except to take the chattel mortgage aforesaid.

The questions of law arising upon this agreed state of facts were transferred, and such judgment was to be rendered as this court should order.

*Burns & Fletcher*, for the plaintiff.

*Benton & Ray*, for the defendants.

SARGENT, J. From the case it appears that the Chandlers and Larys, being seized of certain lands in Milan and Success, on the

19th of July, 1854, conveyed the same in mortgage to one A. G. L., which mortgage was duly executed and recorded, and was by the said A. G. L., on the day of its date, assigned and delivered to the plaintiff, with the notes secured by it.

The next year, 1855, the mortgagors built a saw-mill on the premises, and procured the articles here sued for, to put into said mill for use there, and they were all, except sixteen of the saws, used in said mill, as such articles are commonly used, for a year or more, and remained there till December 1, 1856; that while thus situated and thus used, the plaintiff commenced proceedings to foreclose his mortgage on the premises; that his writ of entry was entered and a conditional judgment was rendered in his favor, and that possession was delivered to him March 25, 1857, of the whole premises, under a writ of possession founded on said judgment.

In the mean time, after the plaintiff had obtained his judgment, and before he got possession, the Chandlers and Larys took the saws and belting from their appropriate places in the mill, and removed them to other places in the mill and the file room adjoining, which was a part of the establishment, for safe-keeping, where they remained till after the time when the plaintiff was put in possession of the whole premises, under his writ; after which, the Chandlers and Larys took all the property here in controversy and carried it to Berlin Falls, and April 27, 1857, mortgaged the same to these defendants, as chattels, the mortgage being upon sufficient consideration, and duly executed and recorded.

Before the commencement of this suit, the defendants sold the saws and belting upon their chattel mortgage, but have in no way sold or disposed of, or in any way intermeddled with any of the other property, except to take the said mortgage as aforesaid.

Now, upon these facts as stated, no question arises as to any of the property claimed by this plaintiff except the saws and belting. The defendants have taken a chattel mortgage of the other property, but it does not appear that it has ever been in their possession, or that they have ever used or appropriated it in any way, or exercised any acts of ownership over it except to take the mortgage. No demand has ever been made upon them for the property, and it does not appear that they had any knowledge of the situation of the property, or of the plaintiff's claim to it.

If the property had been demanded of the respondents, and they had refused to deliver it, but had claimed to hold it on their mortgage, that would be evidence of a conversion. The Chandlers and Larys may be liable for removing the property from the mill, and their acts in mortgaging it to secure their own debt, would constitute a conversion of it by them, as against this plaintiff, provided it should be held that the property was such as passed to the plaintiff, by the mortgage of the real estate. *White* v. *Phelps*, 12 N. H. 386; *Doty* v. *Hawkins*, 6 N. H. 247.

In addition to purchasing property of one who has no right to sell, there must be the holding possession to the purchaser's use, or the claiming of title or some right to the same, to constitute a con-

version.   *Lathrop* v. *Blake*, 23 N. H. 46;   *Hyde* v. *Noble*, 13 N. H. 494;  *Lovejoy* v. *Jones*, 30 N. H. 164.

Laying out of the case, then, every thing but the saws and the belting, let us see how the case stands as to those.   The same rule as to fixtures, applies between mortgagor and mortgagee as is applied between vendor and vendee, and executor and heir, while a different rule applies between landlord and tenant.   *Kittredge* v. *Woods*, 3 N. H. 503;  *Despatch Line of Packets* v. *Bellamy Manf. Co.*, 12 N. H. 232, and cases cited;  *Lathrop* v. *Blake*, 23 N. H. 64;  *Wadleigh* v. *Janvrin*, 41 N. H. 503.

Fixtures, and additions in the nature of fixtures, which are placed in a building by a mortgagor after he has mortgaged it, become part of the realty, as between him and the mortgagee, and can not be removed or otherwise disposed of by him while the mortgage is in force;  *Winslow* v. *Merchants Insurance Co.*, 4 Met. 306;  *Butler* v. *Page*, 7 Met. 40;  *Pettengill* v. *Evans*, 5 N. H. 54;  *Cole* v. *Stewart*, 11 Cush. 181;  and in the last case it was held, not only that the mortgagor could not remove such fixtures, but that any third person who should do so, by permission or request of the mortgagor, was liable for so doing to the mortgagee, though the mortgagor continued all the while in possession.

It is also well settled, that where such chattels have been so attached and used, as to become parts of the realty, yet when they, by the wrongful acts of the mortgagors, were severed and removed, and became chattels personal again, the property in them still remained in the plaintiff, and he could bring trespass *de bonis asportatis*, or trover for them as for other personal chattels.   *Pinkham* v. *Gale*, 3 N. H. 484;  *Sawyer* v. *Twiss*, 26 N. H. 348;  *Plummer* v. *Plummer*, 30 N. H. 570;  *Wadleigh* v. *Janvrin*, 41 N. H. 520, and cases cited.

So that although the plaintiff might have maintained trespass *quare clausum*, against the Chandlers and Larys, for entering and taking away this property, if it shall be held to have become parts of this realty, yet he could also maintain trespass *de bonis*, against them for carrying away the chattels after they were severed, and converting them, or trover against them or any subsequent holder under them, who should convert the same to their own use.   The only question then remaining here to settle is, did the saws and belting ever become parts of the realty, as between executor and heir?

As to the sixteen saws never used, they can not be said to have been so affixed.   They were never set in the mill or used there, or in any way attached to it or any part of it.   The mere fact that they were purchased with the intention to be used there is not sufficient to make them fixtures.   If they had been once affixed, and had been taken out to repair or to file, while the others were at work in their place, the case would be different, for they would none the less be parts of the mill when thus removed for a temporary purpose, than when in actual use.

Articles once affixed and used in such a way as to become parts of the freehold, though disannexed at the time of the sale for a tem-

porary purpose, still pass by the conveyance of the real estate. *Despatch Line of Packets* v. *Bellamy Manf. Co.*, 12 N. H. 232; *Lathrop* v. *Blake*, 23 N. H. 66, and cases cited.

But we think that the saws that had been set and used in the mill, for a year or more, (and as long as it would seem as the mill was used) while thus in use, were as much a part of the mill as the water wheel or the carriage. They were made fast to portions of the mill by bolts or keys, or in some way depending somewhat upon whether they were circular or upright saws, which, the case does not show.

Machines and other articles essential to the occupation of a building or to the business carried on in it, and which are affixed or fastened to the freehold and used with it, partake of the character of real estate, become part of it and pass by a conveyance of the land. Nor does so much depend upon the character of the fastening, whether it be slight or otherwise, as does upon the nature of the article and its use, as connected with the use of the freehold. *Despatch Line* v. *Bellamy Manf. Co.*, 12 N. H. 232, 233, and cases cited.

Now, a saw-mill without any saw, would be about like a grist-mill without mill-stones, and mill-stones have been held to be a part of the realty, even when removed from their place and temporarily severed or disannexed from the other parts of the mill. And it would make no difference, probably, whether the stone thus disannexed was laid up to be picked or was laid in an adjoining room awaiting an occasion when it would be needed in its appropriate place again, as was the case with these saws. *Lyford's Case*, 11 Coke 50. So in *Regina* v. *Wheeler*, 6 Mod. 187, it is said a mill is a known thing in law, and so are the parts thereof; and, therefore, if the owner of a mill take out one of the mill-stones to pick or gravel it, and devise the mill while the stone is severed from it, yet it shall pass as part of the mill.

We see no good reason why the same may not with equal propriety be held true of the saws in a saw-mill. They are actually attached to the other machinery in the mill much more strongly than the stone of the grist-mill. In the latter case, the stone only rests upon the iron work fixed to the top of the perpendicular shaft which turns it, and is kept there by the force of gravity, while the attachment of the saws must be nice, exact, and strong; the saw must be made secure and fast, so that there may be no lateral motion; and in case of the upright saw, keys must be driven, or other means used to produce the necessary tension of the saw. And still, this matter of the attachment, as we have seen, is not the controlling circumstance in the case.

The belting, also, of a mill runs from the large wheel connected with the motive power, over a drum upon the main horizontal shaft, upon which are various other drums, upon which are belts connected with the various distinct portions and parts of the machinery. Whether the belting could be removed whole without removing any of the machinery, or whether, as is the case ordinarily, it could not be disengaged from the drums and shafts altogether, without remov-

ing some of the permanent parts or attachments of the mill, or by disuniting the belts by removing the thongs by which the ends are usually fastened together, the case does not show.

But when a mill of any kind is constructed so as to make belts necessary, in order to run the mill, they would seem to be a part, and as essential a part as any other of the mill. Some grist-mills are constructed in this way, with a belt attached to the main shaft and connected with each run of stones, another to the bolt, another to the smut-mill, &c.; others are constructed with a large cog-wheel with other smaller cog-wheels, that can be thrown into it or upon it, to carry each of the other several parts of the machinery. In one case, the drums and belts perform the same office that the wheels and gearing do in the other. The belting is as necessary as the drums, and both are as necessary in one case, as the cog-wheels are in the other; one of which might be removed, perhaps, with as little trouble as the other. Why, then, should the cog-wheels be considered as a part of the mill and the belting not be so considered?

In *Wadleigh* v. *Janvrin*, 41 N. H., before cited, it was held that the tie-up planks, stanchion timbers, hinge staples, and tie chains belonging to a barn passed by a conveyance of the real estate, although they had all been removed, for a temporary purpose, from the barn before the sale of the farm, and remained severed at the time of the sale. If these articles became fixtures by having been connected with the building as they had been, and used, as was the case there, we can not see why, in this case, the belting should not be considered a part of the mill, when it was absolutely necessary for the operation of the mill for any useful purpose. That case, we think, covers the whole ground of this case; and so do many of the authorities there cited. So does *Wilson* v. *The Merchants Insurance Co.*, 4 Met. 306; *Snedecker* v. *Warring*, 2 Kern. 170; *Baker* v. *Davis*, 19 N. H. 325; *Walker* v. *Sherman*, 20 Wend. 636; *Farren* v. *Stackpole*, 6 Greenl. 154, though the last decision seems to be founded upon a special custom or usage in the State of Maine.

We do not intend to hold that a saw might not be put into a mill and used for a temporary purpose, without any design of keeping or using it there permanently, without its becoming a fixture so as to pass with the land, or that the owner of the mill and of the machinery in it, while unincumbered, may not treat the machinery as personal property and sell or mortgage it, or that the same might not be attached as such, when, if he had sold or mortgaged the mill with its appurtenances, without reservation, the whole might have passed in the conveyance, and after third persons had thus acquired rights in it, he could not afterward treat it, nor could it be treated as personal property.

Upon the facts here stated, we think the plaintiff is entitled to recover the value of the twenty-four saws and of the belting.

*Judgment for the plaintiff.*