Johnson, J. (Dissenting.)
If upon the facts, which are undisputed, the plaintiffs were entitled to an absolute direction in their favor, it will be unnecessary to look further into the case, for the other alleged errors could not have prejudiced the defendant. The statue and sun-dial were originally personal property. To lose that character they must have been annexed or attached in some sufficient manner to the freehold. If they have never been so annexed or attached, .then they retain their chattel character, and were subject to sale on execution as personal property. The question, then, is, whether their resting by their own mere weight upon substructures prepared for their support, but to which they were not in any manner fastenéd or attached, is in the sense of the law an annexation or affixing to the freehold. The law, in respect to fixtures, was so completely examined in Walker v. Sherman (20 Wend., 636), that it is unnecessary again to go over the cases there considered. (See also Elwes v. Mawe, in 2 Smith's Lead. Cas., 99, and cases there cited.) The general rule requires physical annexation to the freehold. To this rule there are some, exceptions under the head of constructive annexation, as the deeds of an estate, the chest containing them, deer in a park, fish in a pond, doves in a dovecote; so also the keys of doors, locks, windows and articles of the like nature, which form as much a part of the structure of a house as the walls, although not annexed to it at all, or not in such a manner as to be incapable of removal without injury to the house. These are incidents io the house, *181 and from the nature of their use can be no otherwise annexed to it without the entire subversion of the purpose for which they are intended. But this class of exceptions does not, in the reason of the rule, nor according to the decided cases, extend to articles merely of ornament not physically annexed to the soil. I have been unable to find any case at common law, or any statement in any text-book, upon the precise case of a, statue; though it would seem that the question must, in England, frequently have arisen in practice, and if it forms an exception to the general rule, it is not a little singular that no mention is anywhere made of the fact.
It seems clear that a statue of ordinary size, standing upon a movable pedestal in a house, would not pass by a conveyance of the house, any more than a porcelain vase or any other ornamental article of furniture. Nor do I think if the same statue were set out of doors it would thereby lose its character of personalty. The mere difference m weight between such a statue and that in question does not seem to me a sufficient ground on which to establish a different rule. It stands for ornament alone, and is not fastened to the freehold, and its character must depend upon the general rule.
The principles of the common law and the cases respecting fixtures have been lately considered in the Queens Bench, in Wiltshcar v. Cottrell (18 Eng. L. and E. Rep., 142). The action was trover by the purchaser against the vendor of certain lands, to whom they had come by devise, for certain staddles, a threshing machine and a granary, all which had been put upon the land in the time of the devisor. The staddles were erections for the purpose of supporting ricks, and were stone pillars, mortared to a foundation of brick and mortar let into the earth, with stone caps' mortared on the pillars. As to these the court said, “ it is clear that ¡such erections would pass under the conveyance, either as: part of the land or as fixtures.” The threshing machine *182 fixed by bolts and screws to posts which were let into the ground, and the machine could not be got out without disturbing some of the soil. Of this the court said, “ being so attached to the land it would clearly pass under the conveyance.” The granary was laid on a wooden foundation, supported by staddles, and it lay upon them in the same manner that the ricks lay upon the rick staddles. The part above the stone caps was wood with a tile roof. In removing this granary, the caps of the staddles and the upright stones were taken away; but it appeared that it was not attached, except by its weight, to the staddles, and it was proved that by sufficient power it might have been' lifted from the staddles, without, disturbing them. The court said : “We think that we are bound by the authorities to consider such an erection as a mere chattel, and neither as part of the land nor affixed to the freehold. In Culling v. Tuffnal (Bull. N. P., 34), a bam erected on pattens or blocks of wood, but not itself affixed in or near to the ground, was held to be removable. The custom of the country was relied on in that case, as making such erections removable by an outgoing tenant; but Lord Ellenborough in the great case of Elwes v. Mawe, in referring to Culling v. Tuffnal, treats the barn as having been clearly removable without any custom, because it was not a fixture at all, as not being fixed in or to the ground. In Wansborough v. Maton (4 Ad. and, El., 884), it was decided that a bam resting by its mere weight on a brick foundation was not a fixture, but was a mere chattel for which trover might be brought. Patteson, J., referred in that case to The King v. Otley (1 B. and Ad., 161), where it was held that a windmill resting by mere weight on a foundation of brick was not a part of the freehold so as to contribute to the value of the tenement. In The King v. Inh. of Londonthorpe (6 T. R., 377), it was held that a windmill not attached to the ground, but constructed on cross-trees laid upon brick pillars, but not attached thereto, was a mere chattel. On these *183 authorities we think that the granary in question must be treated as a mere chattel and not as a part of the land.” I think if we break down the general rule that requires actual annexation to the land as the first requisite to the establishment of the proposition that a particular chattel has become a part of the freehold, and allow the necessary exceptions which now exist under the name of constructive annexations to be enlarged upon an actual or presumed intent in the owner, that a chattel shall be a part of and' go with the freehold, we shall much increase the uncertainty which even now exists in respect to the question of fixture or not, and shall be more likely to defeat the real intentions of parties, than we shall be by adhering firmly to the established general rule. The rule of the civil law was substantially the same: “ Statues placed on bases of masonry, pictures fixed to the walls, and lamps attached to the ceiling, are not parts of the house, because they are there not as parts of its structure, but as ornaments.” (7 Pothier's Pandects, 110.) It is true the text speaks specifically of objects in houses; but that it extends to similar objects out of doors, is shown by the special provision which is elsewhere stated as to statues from which streams of water are discharged, which are held to be parts of the house. (Same book, 107.) So also, under the provisions of the Code Napoleon, the articles in question would be regarded as personalty: “All movables which the owner of an estate has annexed to it permanently are immovables by destination.” The owner is deemed to have attached permanently to his estate movable effects, where they are fastened to it by plaster, lime or cement, or when they cannot be detached without being broken and injured or without breaking or injuring that to which they are attached. As to statues, they are immovables when they are placed in a niche made expressly to receive them, although they may be removed without fracture or injury. (§§ 524, 525.) Commenting upon these provisions, Toullier says (1 Droit Civil Francais, *184 12): “ Whence it follows that those which have been placed upon pedestals m houses, courts and gardens, preserve the qualities of movables.”
The judgment of the supreme court should, I think, be affirmed.
Denio, J., was also in favor of affirming the judgment of the supreme court.
Judgment reversed.