Mr.-Justice NELSON,
in whose opinion concurred CLIFFORD and FIELD, JJ., dissenting.
The complainants in this bill, who set up a right to the equity of redemption in the Bronson and Soutter mortgage, insist that the whole of the rolling stock on the old La Crosse and Milwaukie Road, with a trifling exception, is subject to the lien of this mortgage on the Eastern Division, the foreclosure of which is pending; and that-a proper allowance of rent' for the use of it on the Western Division should be made, and the avails applied to the interest due on the mortgage; and further, that the question involved was litigated and so decided in the foreclosure suit on the mortgage of the Western Division.
We have looked into the position of the counsel for the complainants, and have come to the conclusion that it is not maintained.
For aught that appears, all the rolling stock of the old company was purchased by it for the uco.and benefit of the whole of the road, out of the common funds of the company, and a lien was given upon it in each and all of the- mortgages of that company on the two divisions, the Eastern and Western, and also upon it in the mortgage of the whole road to the complainants. These liens would take effect as matters of law according to priority. Any other disposition *645 of them would be unjust and in violation of good faitb to the bondholders, for the security of the payment of whose bonds the mortgages were given.
The District Court, however, seems to have entertained the idea, that any of the rolling stock purchased by the proceeds of the bonds of a particular mortgage should be exclusively subject to the lien of that mortgage, and made a reference for this purpose; and on the coming in of the report, acting upon this idea, decided that some forty box cars purchased by the proceeds of the bonds .of the first mortgage on the Western Division, should be sold and the proceeds applied exclusively to this mortgage, and that all the rest of the rolling stock on the road (meaning the whole road), when the receiver was appointed, was covered by the first mortgage of - the road from Milwaukie to Portage (meaning the Palmer mortgage), and all purchased since the appointment of the receiver be applied to this first mortgage, and the mortgage in the bill of foreclosure, in the proportion therein mentioned.
The decree of foreclosure, after describing the property to be sold, and particularly the forty box cars and the share of the stock purchased since the appointment of the receiver, adds, “The remaining rolling stock is subject to prior mortgages.”
■ In the report of the sale by the marshal, he states, that he sold of the rolling stock the forty box cars, and the share of the stock purchased since the receiver was appointed, free and clear of all incumbrances; but the remainder of the rolling stock was sold, subject to the lien of mortgages prior in date to the mortgage under which the sale was made. This report of the sale by the marshal was excepted to, but after argument the exceptions were overruled, and the sale confirmed, and although the complainants here were party defendants in that suit of foreclosure, no appeal was taken from the decree of confirmation.*
We are of .opinion, therefore, that the question as to the *646 ownership or the liens upon the rolling stock in question were not adjudicated by the court below in the foreclosure suit on the mortgage upon the Western .Division, and that the question is open for this court to determine.
We agree that the rolling stock upon this road covered by the several moi'tgages, and as respects any other valid liens upon the same, is inseparably connected with the road; in other words, is in technical language a fixture to the road, so far as in its nature and use it can be called a fixture. But it is a fixture extending over the entire track of the road from Milwaukie to La Crosse. It is not a fixture upon any particular division or portion; but attaches to every part and portion. It was purchased, as we have before said, for aught that appears, by the common funds of the old La Crosse and Milwaukie Company, and which were derived from its various resources, — subscript' ons of stock, sale of bonds secured by mortgages, earnings of the road after a part or the whole line was fitted for the running of-the ears; and the mortgages- or other incumbrances on the road made by the old company, whether on a portion or on the whole line, take effect according to the priority of lien. These liens, so far as respects the rolling or moving, stock, attach to them a right to have the cars run upon the road, upon its entire line, as the value of the lien depends upon this use of the property. The lien was acquired in contemplation of this use, for without it a mortgagee or lienholder of the commonest observation must have seen the security would be next to worthless. The great value of the road and rolling stock, as a security, consists in the use and operation of. the same as a railroad line in the carriage of passengers and freight; it. is the combined use maintained and enforced that enables the lien creditor to realize the security contemplated when the credit was given.
Our conclusion, therefore, is, that the mortgagees of the Eastern line have by virtue of the liens of their mortgages such an interest in the rolling stock, as to entitle them to the appropriate use of it in running the road for the carriage of passengers and freight; and that the Milwaukie and St *647 Paúl Company, by reason of their title under the mortgage foreclosed on the "Western Division, acquired the same, right; and also, that the complainants by virtue of their title under the mortgage foreclosed, acquired a similar right, and that neither has acquired an exclusive right or title to any portion of the rolling stock. We say nothing as to the persons or parties who may be entitled to liens on their property, as these questions are not before us; nor the evidence that would enable us. to determine the same, nor could they be determined undér this bill. Our conclusion is that the decree below should be affirmed..
Note by the Reporter.
It will be seen in- the foregoing report that one of the questions decided .in the' inferior court was, that rolling stock is .a fixture. ■ The question was argued in this court with ability on both sides. But though the. decision here is not inconsistent with that idea, but on the contrary, as the reporter supposes, rather affirmative of it, the point was apparently one not necessary to be specifically passed upon, and is not discussed in tjie opinion. The. matter is, however, one of such practical and increasing importance that the reporter supposes he will gratify the profession by giving-in this collateral way an extract from the brief of the appellant’s counsel, Mr. Carpenter, who endeavored to support the modern view.
Is Bollihg- Stock a Fixture?
The term fixture was early-seized upon hy legal writers to supply a deficiency in their technical terminology; but was not entirely reclaimed from its popular use and fixed in that strictness and uniformity of meaning requisite to seienlific certainty; and-as used by legal writers, it has, continually fluctuated^' between a technical and a popular use. We have, therefore,, many kinds of fixtures ; and many exceptions and qualifications to each kind. A. fixture is one thing between landlord and tenant; a different thing between vendor and vendee; is. one thing in the economy of trade; another for the purposes of agriculture. Originally, the term denoted those movable things which had become immovable by connection with the *648 freehold. But presently it came to mean those things, which although attached to the freehold, could, under certain circumstances, he removed. In its popular use it meant something affixed or fastened to the freehold; and in the. early cases, and many of the later ones, we find the popular definition of the term sweeping everything before it. An article was held to he a fixture or not, from the presence or absence of a screw fastening it to the floor.
By the great majority of cases, ancient and modern, there is no doubt that a fastening was essential to constitute the thing in question a part of the freehold; and nothing kept in place by mere gravitation was held to be a fixture. It is not less true that from the first we have the doctrine of constructive annexation equally well established. In Liford’s Case,* it is said to have been decided in the fourteenth year of Henry VIII, that a millstone, removed from a mill to bo picked, was nevertheless constructively a part of the freehold, and passed by deed conveying the mill. In England, title deeds have been held to be fixtures; and deer in a park, and fish in a pond, to pass with the estate.
The right to remove articles as fixtures has been carried farther in favor of tenants and to encourage trade than in any other cases ; yet this right has been somewhat limited; and it has been held that where an engine, in no way attached to the freehold, could not he removed without injury to the building in which it was set up, that the tenant could not remove it. There are cases in England of'more recent date, still farther tending to put this subject upon a reasonable, as distinguished from a philological ground'; and to hold that a thing is to be regarded as real or personal property, according to its relation to, and connection in use with, the freehold, rather than from the manner in which that connection may be accomplished. And it has been expressly decided that actual fastening is not necessary to make a thing part of the estate,
In the United States we have three different rules established by different States.
1. The thing must be so fastened to the estate that its removal would seriously injure the freehold, beyond the loss of the thing removed.
2. If the chattel is essential to the use of the real estate, and actually, though slightly attached, it will pass with the freehold.
3. If the thing be essential to the use of the real estate, and has uniformly been used with it, then it passes, though not fastened to it.
As an original proposition, the third rule seems the most satisfactory. Take for instance a manufacturing establishment. The building is constructed tc receive the various machines necessary for carding wool, spinning yarn, weaving and dressing cloth, and this business is carried on in the building. One machine is so light, or its motion'so violent, that it must be steadied by some fastening to the floor; the next is heavy enough to keep in place by its own weight. N ow there is no reason in saying that one machine will, and the other will not, pass with the freehold. Both are essential to *649 the same business, one is useless without the other, and both are in the mind of the purchaser when he buys the establishment. It seems absurd to say that, to be sure of getting all the machinery, he must nail it down to the floor, -when perhaps fifty men could not start it a hair. The purpose for which the thing was constructed, and the manner in which it was enjoyed in connection with the freehold, should determine whether it is real or personal estate
Following this view', it was held, in Farrar v. Stackpole,* that where machinery was essential to the purposes for which the building in which it was used was erected, that this fact alone constituted it real estate, whether it was nailed down of whether only held down by the laws of gravitation.
Other cases† are to the same effect; although a far greater number of cases could be cited to the contrary, both from England and American reports.
In Walker v. Sherman,‡ actual fastening was held essential; hut in a more recent case, Snedeker et al. v. Warring, § this distinction is overruled, and the law of fixtures put upon sensible ground and according to the doctrine in. the above cases. In the latter case, a statue and sun-dial were hold part of the real estate. The court say, “If the statue had been actually affixed to the base, by cement or clamps, or in any other manner, it would be conceded to he a fixture and to belong to the realty. But as it was, it could have been removed without fracture to the base on which it rested. But is that circumstance' controlling? A building of wood, weighing even less than this statue, but resting on a substantial foundation of masonry, would have belonged to the realty. A thing may he as firmly affixed to the land by gravitation as by clamps or cement. Its character may depend much upon the object of its erection. Its destination, the intention of the person making the erection, often exercises a controlling influence ; and its connection with the land is looked at principally for the'purpose of ascertaining whether that intent was that the thing in question should retain its original chattel character, or whether it was designed to make it a permanent accession to the lands. ’ ’
We come now to give this law of fixtures an application to the present subject-matter.
Suppose a corporation created by law to build, equip, and work a railroad, and for no other purpose. It mortgages its roadbed, between certain limits, all its depots and station buildings, its right of way, and all appurtenances between those limits; and all the'franchises, privileges, and rights of the company of, in and to, or concerning the same. The road is useless without the rolling stock. Here Is a case then falling fully within the principle of earlier cases ;|| the real estate worthless without the rolling stock, *650 which has been used only upon the road; and the rolling stock, so essential to the use of the road, utterly worthless for any other or different use. "We have already seen the senseless fiction of fastening done away with; and we have but to apply the principles of the cases cited, and we shall come to the result that the rolling stock is in the nature of a fixture; and as such must be conveyed by the mortgage conveying the estate. It has not, indeed, exactly the same connection with the realty that the statue had in Snedeker v. Warring; it is not held or kept in one place by fastenings, or by its weight. But this circumstance is of no consequence if the principle deducible from the cases above cited is to govern. If a billiard table were fastened to the floor so as to be conceded a fixture, would not the ball's and cues pass also? A bucket in a well may be detached,,and it is movable, running from top to bottom of the well, yet it is a fixture by comnjion consent. •. A shuttle in a loom is thrown from place to place by the motive pofwer of the machinery, yet it is an essential part of the machine. It is not inconceivable that rails and cars might be so constructed as that the car should be held upon the ■rail by certain material contrivances, and yet be propelled from one station to another; from one end of the road to another,, by steam power. In such a case none would doubt that the oars were a fixture. Can it be said that the manner of accommodating and adjusting the cars to the rails can make any difference? “The railroad, like a complicated machine, consists of a great number of parts, a combined action of which is essential to produce revenue. And as well might a creditor claim the right to levy on and abstract some essential part from Woodworth’s planing machine, or any other combination of machinery, as to take from a railroad its locomotive and passenger cars. Such an obstruction would cause the operations to cease in. both cases.”*
Then, again, following the principle of Snedeker y. Warring, the destination of the rolling stock, the intention of a company to pass it, will have an influence in determining whether such stock is real or personal property. This consideration would be as conclusive in regard to the'furniture of a railroad as it was in regard to the statue, where it was presented: and even more so. The statue might have been sold by the sculptor for the adorning of any residence; though in fact it was mádo for the particular use. The right to buy and own rolling stock is a franchise, and can only be exercised as an accessory to the operation of a railroad. A ny buying or selling of cars, engines, &c., by the company, for the .mere purpose of speculation, would be unauthorized and illegal. Here, then, is a consideration showing that a company intends the rolling stock to be used only for the road, or, in other words, to become a permaneht accession to the'real estate of the company. The intention of the owner, the use for which the property was designed, the connection between the road and the cars, and the essential relation between them, for the purposes of revenue, all combine to declare the rolling stock real estate.
In Pierce v. Emery,† the Portsmouth and Concord Railroad Company had *651 mortgaged all their property, real and personal, and all their franchises. The court held that the rolling stock acquired subsequently to the execution of the mortgage belonged to the mortgagee. The court say, “The object of the act being to give the bondholders a substantial and available security for their money, and a preference over other creditors not previously secured, can only be answered by so construing the law authorizing the mortgage as to give the bondholders security upon the road 'tself, as the general subject-matter of the mortgage, and upon the changing nd shifting property of the road as part and parcel, by accession, of the thing mortgaged.”.
In Phillips v. Winslow, in Kentucky, it was held that, in equity, the rolling stock acquired subsequent to the execution of the mortgage, passed as an accession or fixture.
In Redfield on Railways,* it is said, indeed, that rolling stock is an accessory, though not a fixture. The distinction is, perhaps, one of words. In the strict technical sense of the 'word, as used in the old cases, rolling stock is not a. fixture; but within the reason and philosophy of the modern cases it would seem to be so. If it must not be called a fixture, in deference to the old cases, it is yet an accessory of that sort, which has every element of one; and to be regarded accordingly, however named.
The conclusion is, that rolling stock, put and used upon a railroad, passes with a conveyance of the road, even without mention or specific description.

 Blossom v. Milwaukie, &c., R. R. Co., J Wallace, 655-7.

 11 Reports, 50, b.

 6 Greenleaf, 157.

 Lawton v. Salmon, 1 Henry Blackstone, 259; Fairis v. Walker, 1 Bailey, 541 (S. C ); Voorhis v. Freeman, 2 Watts & Sergeant, 116; Pyle v. Pennock, Id. 390; Goodrich v. Jones, 2 Hill, 142.

 20 Wendell, 636.

 2 Kernan, 170.

 Farrar v. Stackpole; Voorhis v. Freeman; and Pyle v. Pennock

 McLean, J. in Coe v. Pennock et ais

 32 New Hampshire, 484.

 Page 576, note.